## 55811. DIXIE HOME BUILDERS, INC. v. WALDRIP.

QUILLIAN, Presiding Judge.

Mamie G. Waldrip brought her complaint against Dixie Home Builders, Inc. seeking to recover upon a note executed and delivered to her by the defendant. The prayers were for the balance remaining on the note in the sum of $6,000 plus interest and attorney fees. The defendant answered, denying the indebtedness, and filed a counterclaim, alleging that the plaintiff wrongfully appropriated $7,903.12 of the defendant's funds. The counterclaim set out that the plaintiff entered into a conspiracy with her daughter to deprive the defendant of the funds, and to appropriate them to the use of the plaintiff; in furtherance of the conspiracy the plaintiff and her daughter caused four checks to be drawn on the account of the defendant payable to the plaintiff, totaling $7,903.12; the checks were drawn on the defendant's account without the defendant's knowledge or authority; the checks were negotiated by the plaintiff and the funds were appropriated by her to her own use.

After discovery, the case came on for trial before a judge and jury. At the close of the evidence the trial judge directed a verdict for the plaintiff in the amount sought in the complaint and against defendant on the counterclaim. From this judgment appeal was taken. *Held:*

During the course of the trial, the defendant in support of its counterclaim sought to introduce into evidence four checks which were allegedly negotiated on its account by the plaintiff and her daughter acting in concert. Evidence had been introduced that the plaintiff's daughter had her name on a signature card with the defendant's bank. However, she was no longer authorized by the defendant to write checks on its account. The authority given to the bank had not been withdrawn. It was further shown that the plaintiff and her daughter went to the offices of the defendant; there the plaintiff's daughter obtained four blank checks on the defendant's account; the plaintiff's daughter wrote out those checks naming the plaintiff as payee and signed them; then took the checks to different branches of the bank where the plaintiff endorsed the checks and her daughter obtained the money from the banks. The evidence further showed that some of this money was utilized by the plaintiff; what amount, however, was not shown.

The trial judge refused to allow the four checks to be admitted into evidence and set forth several reasons for refusing their admission. We find the reasons offered are not sustainable as legal grounds.

It was argued before the trial judge that the checks were inadmissible since the issues were res judicata. Apparently, they had been introduced in a divorce action between the plaintiff and her husband who was the principal stockholder of the defendant. This constituted no basis for declining to admit the checks. Res judicata is an affirmative defense and must be pleaded. CPA § 8 (c) (Code Ann. § 81A-108 (c); Ga. L. 1966, pp. 609, 619; 1967, pp. 226, 230; 1976, pp. 1047, 1048). Moreover in order for the doctrine to apply there must be an identity of the parties, identity of the cause of action, and an adjudication by a court of competent jurisdiction. Code § 3-607; *Stevens v. Stembridge,* 104 Ga. 619, 622 (31 SE 413). Even when considered under the doctrine of estoppel by judgment the evidence in this case fails to show an identity of the parties involved.

Plaintiff argues in this court that "there is no such thing as a civil action for conspiracy." See *Jones v. Spindel,* 113 Ga. App. 191, 193 (147 SE2d 615). As pointed

out, conspiracy itself furnishes no cause of action; for, the gist of the action is not the conspiracy but the tort committed against the plaintiff and the damage done. Here according to defendant's contentions, there was a tort committed against the defendant and damage done by wrongful appropriation of the defendant's money.

The trial judge seemed to have attached some significance to the fact that the defendant's witness could not testify exactly as to the amount the plaintiff actually appropriated to her own use. The crucial issue was the fact as to whether the plaintiff deprived the defendant of the money. If she did, the specific portion appropriated to her own use would be of no significance.

Another ground urged for rejecting the evidence was that the defendant could not "set off" the amount owed by it to the plaintiff. In this connection, we are cited numerous cases dealing with situations prior to the Civil Practice Act of 1967. Under the Civil Practice Act, CPA § 13 (b), permissive counterclaims may be filed. In such case, they do not arise out of the same transaction and in fact need not be tried with the main action. Such a counterclaim may be based on a cause of action ex delicto when the main action was ex contractu. *Ben L. O'Callaghan Co. v. Bond Supply,* 138 Ga. App. 186 (1) (225 SE2d 774). In asserting its counterclaim, the defendant was not bound by any narrow definition of what constitutes a "set off."

The evidence in this case was sufficient to raise a jury issue and the refusal to admit the checks was error harmful to the defendant.

*Judgment reversed. Webb and McMurray, JJ., concur.*

ARGUED MAY 3, 1978 — DECIDED
JUNE 29, 1978.

*Robinson, Harben, Armstrong & Millikan, Frank W. Armstrong,* for appellant.
*Robert E. Andrews,* for appellee.