Fordelia M. GLEASON,
Plaintiff-Appellant,

v.

Ben S. MALCOM, et al.,
Defendants-Appellees.

No. 82–8434.

United States Court of Appeals,
Eleventh Circuit.

Aug. 19, 1983.

Robert G. Wellon, Atlanta, Ga., for plaintiff-appellant.

Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., for defendants-appellees.

Before FAY, HENDERSON and HATCHETT, Circuit Judges.

PER CURIAM:

The appellant, Mrs. Fordelia M. Gleason, brought this suit against her former federal employer and co-workers, alleging that they conspired to violate her employment rights in derogation of the United States Constitution and numerous statutory provisions and regulations.[1] The United States District Court for the Northern District of Georgia dismissed the claims against her co-workers.[2] We affirm.

Gleason began working in 1974 as the bar manager at the Fort McPherson, Georgia officer's club. In 1977, she complained to her supervisor that the club was improperly operated, pointing to shortages in liquor taxes and questionable inventory controls. An investigative report verified seventy-five percent of her allegations. Despite the validity of her accusations, one of the investigating officers concluded that Gleason suffered from behavioral problems. He recommended that she be discharged from her employment and that she obtain psychiatric counseling. Colonel Ben S. Malcom, the post commander, decided not to dismiss Gleason, but to monitor her activities instead. Gleason protested this so-called "monitoring order," but admits that she has no evidence that her supervisors were ever requested to place her under observation.

She retained an attorney for the purpose of removing the adverse statements from her record and to compel a psychiatric examination to prove her mental competency. After receiving approval of her request for psychiatric testing, Gleason declined the evaluation. She then asserted that her attorney had agreed to such an examination without her consent, and that the investigating officers had interfered with her constitutional right to counsel by responding directly to her lawyer rather than to her. Gleason also found fault with the administrative grievance system, and she now alleges deprivation of her fifth amendment procedural due process rights.

Later in 1977, her position as bar manager was abolished during a reduction-in-force. Since Gleason had seniority in the federal employment system, she "bumped" another employee and secured a payroll clerk position. From her new office, she persisted in her attack on the officer's club, telephoning generals—including the Chief of Staff of the Army—at home to pursue the remaining unverified charges that she had made earlier. The investigations were inadequate, Gleason claimed, and she protested that she was made to look like a "liar" since less than one hundred percent of her allegations had been substantiated. Because the generals asked her not to call after hours and not to come to their homes, Gleason charged them with violating her first amendment rights of free speech and free association.

Gleason suspected that her co-workers and supervisors in the payroll office were monitoring her conduct and she now charges that they violated her rights by keeping clandestine records of her activities. She admits that she, in turn, collected notes about their behavior to verify her claims of intra-office harassment.

On February 9, 1978, when she arrived late to work, her supervisor, Lt. James M.

---

1. For a complete listing of Gleason's exhaustive complaints, see Record at 55–72 and 317–322. See also, n. 3, infra.

2. The court also dismissed all of Gleason's complaints against the Department of the Army except charges based on the Privacy Act, 5 U.S.C. § 552a (1976), which are still pending before the district court.

Cullen, was looking for certain payroll records. Gleason had been told not to hoard the documents in her desk. Cullen asked her to stand nearby while he searched her desk for the missing records. In so doing, Cullen moved aside Gleason's personal papers, and—without searching her tote bag—heard a beeping noise from a tape recorder inside her bag. He also found the government's payroll reports in the drawer of her desk. She maintains that Cullen then escorted her to his office, "shoved" her into a chair, and questioned her. Other office workers deny that he treated her in such a fashion. Gleason then accused Cullen of violating her fourth amendment rights, although she acknowledged that her personal property was neither searched nor seized. As a result of these encounters, she was charged with insubordination and making false accusations. After lodging an administrative complaint and appeal, Gleason filed suit against Cullen in state court, charging him with assault and battery. She additionally alleged that Cullen, his assistant, her other supervisors and various co-workers attempted to force her resignation or termination by their conduct, which included harassment, improper training and monitoring her activities. The suit was removed to federal district court and there dismissed on the basis of Cullen's qualified immunity. No appeal was taken from that judgment.

Similar minor incidents troubled the air of the payroll office until 1979, when Gleason's job function was transferred to Red River, Arkansas. She and the other employees received advance notice of the change, and she was offered five or six part-time or temporary posts while she was being "processed for removal" due to the loss of her position. She declined these offers and alleged that she was actually fired for disciplinary reasons in violation of her fifth amendment procedural due process rights.

On May 30, 1979, Gleason filed this suit in the Superior Court of Clayton County, Georgia, charging eleven of her supervisors and co-workers and the Department of the Army with conspiracy to deprive her of her employment rights. This case was also removed to federal district court, where the trial judge observed that conspiracy was not actionable under Georgia law. Record at 42, *citing Dixie Home Builders, Inc. v. Waldrip,* 146 Ga.App. 464, 246 S.E.2d 471 (1978). The court then characterized the suit as one based on tortious interference with a contract of employment, and directed the plaintiff to submit a statement of specific tortious acts committed by defendants. In response, Gleason filed an amended complaint alleging multiple violations of federal civil and criminal statutes, Army regulations and the United States Constitution, based on the incidents described earlier.[3] For instance, she alleged that supervisors and other employees violated her first, fourth and fifth amendment rights by listening to her telephone conversations in an open office, and by making notes of the times she entered and left the office. She asserted a *Bivens*-type suit against the office personnel, seeking one-and-a-half million dollars in punitive damages. *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (sanctioning a federal cause of action for damages to redress fourth amendment violations despite the

3. In her seventeen-page amended complaint against the individual employees, and in the five-page list of charges against the Department of the Army, Gleason makes numerous allegations. By way of example, she claims that her co-workers violated 18 U.S.C. § 1719 (1976) by seeking an evaluation of her mental capacity in a "deceitful" and "fraudulent" manner. (The relevance of this code section, which prohibits private use of official, franked envelopes, is not entirely clear.) She also contends that her supervisors made irresponsible statements about her character in violation of 18 U.S.C. § 1621 (1976) (prohibiting perjury under oath as to any material matter). The district court dismissed these and similar statutory charges.

On appeal, she does not challenge the district court's dismissal of the vast majority of her claims. Rather, she argues only that she should have been permitted to press her suit for damages to redress her constitutional injuries.

absence of a statute conferring such a right).

In 1981, the district court dismissed the complaint against the individual employees except for the *Bivens*-type conspiracy charge. The judge denied the defendants' motion for summary judgment predicated on the res judicata effect of the first suit. The case was later reassigned to another district court judge, who granted the employees' new motion to dismiss the remaining *Bivens* claim. Final judgment was entered pursuant to Rule 54(b) in favor of the defendants on June 9, 1982. Gleason filed this timely appeal.

The sole issue on this appeal is whether the district court erroneously dismissed Gleason's cause of action for damages against her supervisors and fellow employees because of these alleged constitutional infringements. In *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that a petitioner whose fourth amendment rights were violated by federal agents was entitled to redress his injury through a federal suit for damages. Although there existed no applicable statutory cause of action for the alleged constitutional interference, the court recognized a federal right of action where the complainant would otherwise be deprived of an adequate remedy. *Id.* 403 U.S. at 395–97, 91 S.Ct. at 2004–05, 29 L.Ed.2d at 626–27. *Bivens*-type actions are somewhat extraordinary and are restricted to the vindication of

the constitutional rights of an aggrieved victim only when no equally effective remedy is available. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

After oral argument in this case, the United States Supreme Court handed down its decision in *Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), unanimously holding that a federal employee may not assert a *Bivens*-type claim for an alleged violation of his first amendment rights by his superiors. In thus affirming the decision of the Court of Appeals for the Fifth Circuit,[4] the Supreme Court declared that the judiciary "must pay particular heed to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.,* ——, 103 S.Ct. at 2411. In *Bush* and here, the unique relationship between the federal government and its civil service employees is precisely such a "special factor." *Id.,* at ——, 103 S.Ct. at 2408. Observing that Congress has neither specifically authorized nor expressly precluded the remedy sought by the petitioner, the Court declined to create such a cause of action stating:

In all events, Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service. Not only has Congress developed considerable familiarity with balancing governmental efficiency and the rights of employees, but it also

**4.** The court of appeals held in *Bush v. Lucas,* 647 F.2d 573 (5th Cir. Unit B 1981), that no such cause of action was available because of the "special relationship" between the federal government and its employees. *Id.* at 576. In reaching that conclusion, the court noted two circumstances which would preclude a *Bivens* claim: (1) when the defendant demonstrates "special factors counseling hesitation in the absence of affirmative action by Congress," and (2) where the defendant shows that Congress has provided an alternative remedy which is a substitute for recovery under the Constitution and which is viewed as "equally effective." *Bush,* 647 F.2d at 577; *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–1472, 64 L.Ed.2d 15, 23 (1980). In the civil service employment context, the reasoning in *Bush* applies to Gleason's case:

This special relationship affects not only the substantive rights of public employees, but also the way in which an aggrieved employee can assert and redress his rights in the employment context,

and further,

We stress the remedies made available by Congress to an aggrieved civil servant in order to emphasize the care Congress has taken to carefully balance the employee's rights as a citizen with the government's interest in the efficient conduct of the nation's business. *Id.* at 576–77. While observing that the result might be different if Bush had been without any alternative remedy, the court refused to sanction a *Bivens*-type cause of action. *Id.*

may inform itself through factfinding procedures such as hearings that are not available to the courts.

Nor is there any reason to discount Congress' ability to make an evenhanded assessment of the desirability of creating a new remedy for federal employees who have been demoted or discharged for expressing controversial views. *Id.,* at ——, 103 S.Ct. at 2417.

 In her reply brief to this court, Gleason attempts to distinguish *Bush,* a suit against a supervisor, by pointing out that her suit also includes a claim against her co-workers. This distinction is insignificant. The purpose of denying a private cause of action to federal employees is to ensure that they do not bypass comprehensive and carefully balanced statutory and administrative remedies in order to seek direct judicial relief. *Bush,* at ——, 103 S.Ct. at 2409–2410. Such reasoning would clearly encompass employment relationships at all levels. Gleason had an opportunity to pursue her grievance through administrative channels. *Carroll v. United States,* 522 F.Supp. 458 (N.D.Tex.1981) (no *Bivens*-type suit permitted when plaintiff was able to present her grievances to an administrative body which accorded her all possible relief). As a federal employee, she could have sought equitable relief, *i.e.* reinstatement and back pay, pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (1976). Reinstatement at an equivalent level is possible even though her particular job was transferred to another government facility. *Cf. Hurley v. United States,* 575 F.2d 792 (10th Cir.1978), *appeal after remand,* 624 F.2d 93 (10th Cir.1980). In spite of this adequate alternative, she has elected to seek only money damages from her co-workers and supervisors, including $1,500,-000.00 in punitive damages. Gleason's allegation that she has no adequate remedy except a private cause of action for damages lacks merit.[5] She ignored an alterna-

tive basis for relief when she chose her remedies.

While *Bush* involved only a first amendment claim, as compared with Gleason's multiple assertions of first, fourth, fifth and sixth amendment violations, the Supreme Court's careful analysis applies with equal force to this case. The nature of Bush's particular constitutional injury played little role in the Court's reasoning. Rather, the Court focused on the "special factor," i.e., the federal employment relationship, in determining that there was no need for a new judicially created cause of action. This generally restrictive view of *Bivens*-type claims is emphasized by the fact that on the same day the Court also held that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations. *Chappell v. Wallace,* —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

Accordingly, the judgment of the district court dismissing Gleason's claims is

AFFIRMED.

---

**5.** Similarly, the Supreme Court noted, but was not swayed by, Bush's contention that "civil service remedies against the Government do not provide for punitive damages or a jury trial and do not adequately deter the unconstitutional exercise of authority by supervisors." *Id.,* at ——, n. 8, 103 S.Ct., at 2408, n. 8.