**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-6575
_____

D. C. Docket No. CV 96-H-496-NE

GEORGE MILLER,

Plaintiff-Appellant,

versus

U.S. DEPARTMENT OF AGRICULTURE FARM SERVICES AGENCY, USDA, OFFICE
OF INSPECTOR GENERAL, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____
(June 17, 1998)

Before ANDERSON and BIRCH, Circuit Judges, and COHILL[*], Senior
District Judge.

## BIRCH, Circuit Judge:

In this appeal, we determine, as a matter of first impression,

whether a former employee of a county office of the United States

_____

[*]Honorable Maurice B. Cohill, Senior District Judge for the
Western District of Pennsylvania, sitting by designation.

Department of Agriculture Stabilization and Conservation Service ("ASCS") can bring a <u>Bivens</u> action against the federal government officers responsible for his termination.[1] On summary judgment, the district court ruled that alternate administrative remedies precluded plaintiff-appellant from maintaining a <u>Bivens</u> suit. We affirm.

## I. BACKGROUND

The Secretary of Agriculture ("the Secretary") oversees three levels of "representative" committees charged with assisting the United States Department of Agriculture ("USDA") in carrying out its farm programs. <u>See</u> 16 U.S.C. § 590h(b). At the apex of this structure, the Deputy Administrator supervises state committees composed of farmers appointed by the Secretary. <u>See</u> 16 U.S.C. § 590h(b); 7 C.F.R. § 7.4. These state committees are "responsible for carrying out the agriculture conservation program, the production adjustment and price support programs, the acreage allotment and

---

[1] <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)

marketing quota programs, the wool and mohair incentive payment program, and any other program or function assigned by the Secretary." 7 C.F.R. § 7.20. Under these state committees, elected county committees actually implement the ASCS's programs. See 16 U.S.C. § 590h(b); 7 C.F.R. §§ 7.4, 7.21. Finally, below these county committees are elected local committees that serve as liaisons between farmers and the state and county committees. See 16 U.S.C. § 590h(b); 7 C.F.R. §§ 7.4, 7.9, 7.22. By regulation, employees of the county and local ASCS committees are hired by and serve at the pleasure of these committees. See 7 C.F.R. §§ 7.28, 7.29. As a result, such workers are not "federal employees" for purposes of the Civil Service Reform Act ("CSRA") (codified in various sections of 5 U.S.C.) and so may not avail themselves of its protections. See, e.g., Hedman v. Department of Agriculture, 915 F.2d 1552 (Fed. Cir. 1990) (citing 5 U.S.C. 2105(a)).

In June 1983, plaintiff-appellant, George W. Miller, received an appointment from the Madison County, Alabama ASCS Committee

("the Mobile Committee") to serve as its County Executive Director ("CED"). See 16. U.S.C. § 590h(b)(5)(E); 7 C.F.R. § 7.21(b)(2). Eleven years later, in March 1994, the Alabama State ASCS Committee ("the Alabama Committee") held a hearing to consider removing Miller from his position because of charges that he had violated ASCS policies upon his receipt of information of possible criminal activity. Immediately following the hearing, the Alabama Committee voted to terminate Miller's employment pursuant to 7 C.F.R. § 7.28. According to Miller, however, the Alabama Committee's decision was motivated not by concern about his alleged improper behavior but rather by a desire to punish him for his Republican party affiliation.

After his removal, Miller requested a hearing before the Deputy Administrator, pursuant to 7 C.F.R. §§ 7.30 and 7.31. As authorized by 7 C.F.R. § 7.32, a designee of the Deputy Administrator held a two-day hearing and issued a report to the Deputy Administrator recommending Miller's termination. Miller maintains that the Deputy

4

Administrator's subsequent adoption of the recommendation constituted a deprivation of due process. Miller further alleges that improper motives inspired the Deputy Administrator's confirmation of Miller's dismissal.

On February 26, 1996, Miller filed suit pro se in the district court against a variety of federal officials and agencies, alleging violations of his First Amendment right of free speech and his Fifth Amendment right of due process. Although Miller initially sought relief under 42 U.S.C. §§ 1983 and 1985(3), the district court subsequently construed the complaint as asserting claims under Bivens, since all of the defendants were federal agencies or officials. On April 1997, the defendants-appellees ("Appellees") moved to dismiss, inter alia, on the ground that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, provides an exclusive remedy for improper terminations of ASCS county workers. On May 28, 1997, the district court agreed that Miller's right to judicial review under the

APA precluded him from bringing a <u>Bivens</u> action, and the court therefore dismissed his suit.

## II. DISCUSSION

On appeal, Miller renews his contention that he is entitled to bring an action against Appellees for money damages. In assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept all of the facts in the complaint as true, granting the motion only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. <u>See</u> <u>St. Joseph's Hosp. v. Hospital Corp. of Am.</u>, 795 F.2d 948, 953 (11th Cir. 1986). We review the district court's decision to dismiss Miller's claims <u>de novo</u>. <u>See</u> <u>McKusick v. City of Melbourne</u>, 96 F.3d 478, 482 (11th Cir. 1996).

In Bivens, the Supreme Court held that victims of Fourth Amendment violations by federal officers could bring suit for money damages in federal court even though no federal statute expressly authorized such relief.  See Bivens, 403 U.S. at 397, 91 S. Ct. at 2005.  Although the Court subsequently allowed Bivens actions for violations of other constitutional rights, it has more recently "responded cautiously to suggestions that Bivens remedies be extended into new contexts."  Schweicker v. Chilicky, 487 U.S. 412, 421, 108 S. Ct. 2460, 2467, 101 L. Ed. 2d 370 (1988).  In particular, the Court has emphasized that Congress is in a better position than the courts to weigh the competing policy imperatives involved in the creation of remedies for aggrieved employees.  See Bush v. Lucas, 462 U.S. 367, 389, 103 S. Ct. 2404, 2417, 76 L. Ed. 2d 648 (1983).  Because of its better vantage point, Congress may preclude a Bivens-type constitutional action by express declaration or by creating an exclusive statutory remedy.  See Chilicky, 487 U.S. at 421, 108 S. Ct. at 2467; Lucas, 462 U.S. at 377-78, 103 S. Ct. at

7

2411. Additionally, "special factors" may foreclose the bringing of a Bivens action even "in the absence of affirmative action by Congress." Chilicky, 487 U.S. at 421, 108 S. Ct. at 2466 (internal quotation marks omitted); Lucas, 462 U.S. at 377, 103 S. Ct. at 2411; Bivens, 403 U.S. 396-97, 91 S. Ct. at 2005. As the Court explained in Chilicky:

> [T]he concept of "special factors counselling hesitation in the absence of affirmative action by Congress " has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies.

487 U.S. at 423, 108 S. Ct. at 2468. Thus, before allowing Miller to bring a Bivens action, we must determine whether Congress has expressly precluded such a suit (through specific language to that effect or through establishment of an exclusive remedy), and whether any "special factors" counsel hesitation in extending Bivens

8

to allow aggrieved ASCS county workers to bring suits against their superiors for money damages.

Although Miller has presented us with an issue of first impression for this court, we do not write on an entirely blank slate. Two Circuits, the Eight and the Ninth, have already explored whether ASCS county staffers can bring Bivens actions against federal officers who allegedly violated their constitutional rights. See Krueger v. Lyng, 927 F.2d 1050 (8th Cir. 1991); Moore v. Glickman, 113 F.3d 988 (9th Cir. 1997). In Krueger, a panel of the Eighth Circuit found an absence of either explicit congressional preclusion or "special factors." See Krueger, 927 F.2d at 1054-57. In the view of the Krueger court, the administrative remedy made available by the Secretary to terminated ASCS county workers is "hollow." See id. at 1056. Moreover, the Krueger court believed that "it is clear that the general enabling language used in 16 U.S.C. § 590h(b) cannot be read to evince an intent by Congress to provide a separate (and less desirable) remedial scheme for ASCS county

office employees." Id. at 1055. Therefore, the Krueger court saw no indication that Congress intended "this meager remedy to be Krueger's exclusive remedy." Id. at 1056. Moreover, because ASCS county staffers' "exclusion [from the CSRA] is solely the result of the Secretary's sua sponte decision to use a 'non-traditional' hiring method," the Krueger court concluded that such workers' lack of a CSRA remedy reflects an "inadvertent omission" by Congress. Id. Thus, the Krueger court held that ASCS county employees could bring suit for Bivens damages against federal officials involved in their terminations. See id. at 1057.

In Moore, however, a panel of the Ninth Circuit found Krueger unpersuasive. Unlike the Krueger court, the Moore court believed it had ample evidence not only that Congress is aware of ASCS county staffers' unique status but also that Congress has chosen to give such workers only selective employment rights. See Moore, 113 F.3d at 992. Specifically, the Moore court noted that Congress has granted ASCS workers:

entitlement to severance pay, 5 U.S.C. § 5595(a)(2)(B); participation in the Civil Service Retirement System, 5 U.S.C. § 8331(1)(F); eligibility for group life insurance, 5 U.S.C. § 8701(a)(8); and eligibility for health insurance benefits, 5 U.S.C. § 8901(1)(G). Former ASCS county employees who have later taken civil service positions governed by the CSRA receive credit for their ASCS service, 5 U.S.C. § 3502(a)(4)(C)(i), and for their rights to annual leave and transfer, 5 U.S.C. § 6312(a)(1).

Id. Further, the Moore court observed that, when Congress has wished to confer CSRA "employee status" on ASCS county staffers, it has done so by express terms, as in its inclusion of such workers in the Civil Service Retirement System. See id. (citing 5 U.S.C. § 8331(1)(F)). Finally, the Moore court explained that, when Congress restructured the Department of Agriculture in 1994, it explicitly recognized the "non-employee" status of ASCS county workers. See id. at 992-93; 7 U.S.C. § 6932(e)(1) ("In the implementation of programs and activities assigned to the Consolidated Farm Service Agency, the Secretary may use interchangeably in local offices of the Agency both Federal employees of the Department and non-Federal employees of county and area committees established

11

under section 8(b)(5) of the Soil Conservation and Domestic Allotment Act . . . ."). In conjunction with this evidence of congressional "advertence" regarding the status of ASCS county staff, the <u>Moore</u> court also recognized that Congress has already created a statutory remedy for non-CSRA workers through its provision in the APA for judicial review of final agency orders. <u>See</u> <u>Moore</u>, 113 F.3d at 994; 5 U.S.C. § 702.[1] Therefore, the <u>Moore</u> court concluded that ASCS county workers' statutory right under the APA precluded them from bringing <u>Bivens</u> actions. <u>See</u> <u>Moore</u>, 113 F.3d at 995.

Having carefully studied this split between our sister circuits, we find <u>Moore</u>'s reasoning to be more persuasive and more consistent with our precedents. As a federal worker outside the protections of the CSRA, Miller already has a statutory right to judicial review under the APA. <u>See</u>, <u>Young v. United States</u>, 498 F.2d 1211, 1218

---

[1]Curiously, the <u>Krueger</u> court did not discuss the possibility that an aggrieved ASCS county staffer might have a right to judicial review under the <u>APA</u>. <u>See</u> <u>Krueger</u>, 113 927 F.2d at 1053 (stating that "[t]here is no provision for any sort of judicial review" for ASCS county workers).

(5th Cir. 1974);[2] see also Franks v. Nimmo, 796 F.2d 1230, 1239-40 (10th Cir. 1986); Heaney v. United States Veterans Admin., 756 F.2d 1215, 1219-22 (5th Cir. 1985). Because the Deputy Administrator's rejection of Miller's appeal constitutes a final order, he may bring suit in federal court for relief. See Franks, 796 F.2d at 1239-40; 5 U.S.C. § 702. Although the reinstatement and back pay potentially available to Miller under the APA would not constitute a complete remedy, the Constitution does not require Congress to provide comprehensive relief for violations of federal employees' constitutional rights. See Chilicky, 487 U.S. at 422-23; 108 S. Ct. at 2467.

Under our circuit's precedents, the existence of a right to judicial review under the APA is, alone, sufficient to preclude a federal employee from bringing a Bivens action. See Gleason v. Malcom, 718 F.2d 1044, 1048 (11th Cir. 1983) (per curiam); Grier v.

---

[2]See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

<u>Secretary of the Army</u>, 799 F.2d 721, 725 n.3 (11th Cir. 1986).[3]  The ample evidence, discussed above, that Congress has not only recognized ASCS county staffers' unique status (*i.e.*, that they are outside the protections of the CSRA) but also has acted to grant such workers only selective employment rights, only strengthens the necessary conclusion under our circuit's precedents that Miller may not seek a judicially-created damages remedy for violations of his rights during the course of his termination.  In sum, we hold that Congress has not been "inadvertent" in providing Miller with only an incomplete remedy under the APA and that this alternative remedy precludes Miller from bringing a <u>Bivens</u> action for money damages against Appellees in federal court.

## III. CONCLUSION

---

[3]We regret that neither Miller nor Appellees have chosen to cite these instructive cases from our circuit in their submissions to this court.

Miller seeks to pursue a Bivens action against federal officers who allegedly have violated his constitutional rights in terminating him from his position as CED for the Mobile Committee. The only remedy that Congress has provided Miller for the wrongs that he claims to have suffered is that specified in § 702 of the APA. Congress, however, has not failed to confer CSRA-protected status on ASCS county workers through oversight or inadvertence; Congress has recognized such staffers' unique position and has specifically granted them employment rights as it has thought appropriate. Therefore, we hold that Miller's right to judicial review under the APA precludes him from bringing a Bivens action concerning his termination from his position as CED for the Mobile Committee, and we AFFIRM the decision of the district court.

ANDERSON, Concurring Specially:

I concur.  I agree that our precedents indicate the result reached in this case.  See Grier v. Secretary of the Army, 799 F.2d 721 (11th Cir. 1986); Dynes v. Army Air Force Exchange Service, 720 F.2d 1495 (11th Cir. 1983); Gleason v. Malcom, 718 F.2d 1044 (11th Cir. 1983).