**Herbert CROWELL, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**MORGAN STANLEY DEAN WITTER SERVICES, CO., INC., et al., Defendants.**

No. 98–8803–CIV.

United States District Court,
S.D. Florida,
Northern Division.

Jan. 27, 2000.

---

Kenneth Walter Lipman, Siegel Lipman Dunay & Shepard, Boca Raton, FL, Julian H. Kreeger, Milberg Weiss Bershad Hynes & Lerach, Boca Raton, FL, for Herbert Crowell, on behalf of himself and all other similarly situated, plaintiff.

Bradford David Kaufman, Joseph Clay Coates, III, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, West Palm Beach, FL, Richard A. Rosen, Paul Weiss Rifkind Wharton & Garrison, New York City, Todd E Gordinier, Payne L Templeton, Orrick Herrington & Sutcliff, Los Angeles, CA, for Morgan Stanley Dean Witter Services Co., Inc., defendant.

Kenneth Walter Lipman, Siegel Lipman Dunay & Shepard, Boca Raton, FL, Brett J Williamson, Robert G Loewy, O'Melveny & Myers, Newport Beach, CA, for TCW Funds Management, Inc., TCW Management Co., Trust Co. of the West, TCW Asset Management, TCW Asset Management Co., defendants.

Kenneth Walter Lipman, Siegel Lipman Dunay & Shepard, Boca Raton, FL, for Robert Day, Thomas E. Larkin, Jr., Philip A. Barach, Jeffrey E. Gundlach, defendants.

Bradford David Kaufman, Joseph Clay Coates, III, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, West Palm Beach, FL, Richard A. Rosen, Paul Weiss Rifkind Wharton & Garrison, New York City, for Morgan Stanley Dean Witter Advisors, Inc., Morgan Stanley Dean Witter Discover & Co., Morgan Stanley Dean Witter Distributors, Inc., Dean Witter Reynolds, Inc., Richard M. Demartini, Charles Fiumefreddo, defendants.

## ORDER PARTIALLY GRANTING AND DENYING MOTION TO DISMISS

RYSKAMP, District Judge.

THIS CAUSE came before the Court on defendants' motion to dismiss. [DE 37] Plaintiff has responded and the defendants have replied. Oral argument was heard in open court on January 13, 2000. This motion is ripe for adjudication.

## I. BACKGROUND

On October 12, 1998, plaintiff Herbert Crowell ("Crowell") filed a complaint in the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County on behalf of himself and a proposed class of Florida Dean Witter clients who purchased shares of the TCW/Dean Witter Term Trusts ("Term Trusts") in 1992 and 1993.[1] The six count complaint alleges intentional and negligent breach of fiduciary duty (Counts I and II), constructive and common law fraud (Counts III and V), constructive trust (Count IV) and violations of the Florida Deceptive and Unfair Trade Practices Act ("DPTA"), Fla.Stat. § 501.203(8) (1997) (Count VI). Defendants removed the case on November 10, 1998 to this Court on diversity jurisdiction grounds.

In 1992 and 1993, defendants offered for sale shares in the TCW/Dean Witter Term Trusts ("Term Trusts"), closed-end term trust funds. (Compl.¶ 1). Plaintiff alleges that defendants developed the Term Trusts to exploit and target brokerage customers to switch from their low-risk investments (e.g., certificates of deposit, money market funds, mutual funds, etc ...) to the Term Trusts. (Id. ¶¶ 3, 5). While the Term Trusts were presented as a "very safe alternative" to their existing investments and capable of yielding higher returns, they were actually "extremely high risk bond funds." (Id. ¶ 5). The defendants allegedly failed to inform their customers of these "true risks." (Id. ¶¶ 5, 45). Plaintiff also alleges that the scheme was developed, in part to increase the

---

1. Two other cases have been filed concerning the same Term Trust investments. In summer of 1994, *Sheppard v. TCW/DW Term Trust 2000*, 938 F.Supp. 171, 175–79 (S.D.N.Y. 1996), was filed in New York. In *Sheppard*, the court found that the prospectus for Term Trust 2000 adequately disclosed the risks of the investment and dismissed the complaint for failure to state a claim. A few months later in fall of 1994, a second lawsuit was filed in a California state court against the defendants in *Keeley v. Dean Witter Reynolds*, Case No. 737787 (J. Schwartz). Plaintiff Crowell was included initially as a proposed class representative. However, nationwide certification was denied. Crowell subsequently filed the present action in Florida three months after nationwide class certification was denied.

sales commissions and management/advisory fees of the defendants. (*Id.* ¶ 6).

In the instant motion, defendants move to dismiss Crowell's complaint on three grounds: (1) any "omissions" were fully disclosed in the final prospectus; (2) Counts I through V are barred by the Florida Economic Loss Rule, and (3) the DPTA does not apply to securities claims.

## II. DISCUSSION

### A. Standard on Motion to Dismiss

■ A court should only grant a motion to dismiss for failure to state a claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998), *cert. denied*, 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). *See* FED.R.CIV.P. 12(b)(6). The complaint need only give the defendant fair notice of the plaintiff's claim and the grounds up which it rests. *See Conley*, 355 U.S. at 47, 78 S.Ct. at 103. *See also* FED.R.CIV.P. 8(a)(2). In addressing a motion to dismiss, "a court must accept all of the facts in the complaint as true, granting the motion only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Miller v. U.S. Dep't of Agric. Farm Servs. Agency*, 143 F.3d 1413, 1414 (11th Cir.1998). "[T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir.1995) (quotations omitted).

In ruling on a motion to dismiss, the Court is constrained to review the allegations as contained within the four corners of the complaint and may not consider matters outside the pleading without converting the defendant's motion into one for summary judgment. Fed.R.Civ.P. 12(b)(6); *Payne v. United States*, 181 F.R.D. 676, 677 (M.D.Fla.1998). However, in securities fraud cases it is well-settled that the court may examine the prospectus or other primary risk disclosure document where the outside document is "central to the plaintiff's claim." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999).

### B. Prospectus Does Not "Cure" Alleged Prior Misrepresentations and Omissions

Defendants contend that because the prospectus adequately discloses the risk of the Term Trust investments, Crowell's claims, which are all based upon the same alleged misrepresentations, are immaterial as a matter of law.[2]

■ The Eleventh Circuit, in adopting the "bespeaks caution" doctrine, has held that forward looking statements, when "accompanied by meaningful cautionary statements, may be sufficient to render the complaint immaterial as a matter of law." *Saltzberg v, TM Sterling/Austin Assoc., Ltd.*, 45 F.3d 399, 400 (11th Cir. 1995). This "bespeaks caution" doctrine recognizes that an analysis of fraud claims requires consideration of what information was *available* to the plaintiff at the *relevant time*, i.e., "context is important." *Id.*[3] Thus, if the information available to the

---

2. The defendants direct the Court to Judge Schwartz's ruling in *Sheppard v. TCW/DW Term Trust 2000*, 938 F.Supp. 171, 175–79 (S.D.N.Y.1996), where he found that the Term Trust prospectuses fully disclosed the risks of investment in the Term Trusts, and held that the complaint was subject to dismissal at the pleading stage.

3. *See also In re Hyperion Securities Litigation*, 1995 WL 422480, *7–8 (S.D.N.Y. July 14,

1995) (held that plaintiff may not rely on oral assurances if contradicted by specific written disclosures available to plaintiff at that time); *Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1514 (10th Cir.1983) ("[w]e are imputing knowledge of information only to the extent which such information was actually disclosed...."); *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1030 (2d Cir.1993) (in analyzing motion for summary judgment, court did not consider "Supplemental" since

investor before the investment decision fully discloses the risks with meaningful cautionary statements, the courts may find that alleged misrepresentation insufficient to form the basis of a fraud claim. *See In re Donald J. Trump Casino Securities Litigation—Taj Mahal Litigation,* 7 F.3d 357, 368 (3d Cir.1993), cert. denied 510 U.S. 1178, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). On the other hand, where the information is provided after the fraudulently induced purchase occurs, such disclosures cannot be used to "cure" the alleged prior fraud. *See Sinay v. Lamson & Sessions Co.,* 752 F.Supp. 828, 832 (N.D.Ohio 1990), *aff'd* 948 F.2d 1037 (6th Cir.1991); *LHLC·Corp. v. Cluett, Peabody, & Co.,* 842 F.2d 928, 931–32 (7th Cir.1988) cert. denied 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329 (1988).

In this case, even assuming that the prospectus was an adequate disclosure, a closer reading of the complaint reveals that Crowell does not base his claims upon the prospectus at all. Rather, Crowell's complaint alleges that the defendants "devised and pursued a scheme" to induce their clients to invest in the Term Trusts, which were actually "extremely risky bond funds," contrary to the defendants' representations. (Compl.¶ 5). By periodically creating a new Term Trust every six months, "Dean Witter could continually 'sweep' portions of its customer's Cash Resources into the newest TCW/DW Trust, thus generating huge amounts of underwriting discounts and commissions for Dean Witter and management and advisory fees for Dean Witter and TCW." (*Id.* ¶ 7). Crowell also alleges that the de-

fendants engaged in distribution of false information to the brokers, provided uniform written "sales kits" and held "training sessions" which misrepresented to the brokers that the Trusts "were a 'safe' alternative to the customers with existing conservative accounts, and that, by using monies to buy shares in these Trusts, the customers could increase their yield without increased risk.' " (*Id.*)

At no point in the complaint does the plaintiff base his claims upon misrepresentations in the prospectus. In fact, Crowell states that it was part of the defendants' plan to deliver the prospectus only *after* the purchases had been made:

Defendants knew that the scheme would be successful, in part, because the prospectuses which they were required to utilize in connection with the sale of the TCW/DW Trust' shares would not be delivered to customers until after their purchase of shares in the TCW/DW Trusts, and because the customers would not be informed of their right to rescind their purchase of the shares.

(Compl.¶ 9). According to the complaint— our only source of the facts—the defendants did not provide Crowell with a copy of the prospectus until after his purchases. (*Id.* ¶¶ 9, 45). Thus, plaintiff's claims are based upon the defendants' development of the allegedly fraudulent Term Trusts scheme and sales tactics, rather than a deficiency with the prospectus—which was not even in the plaintiff's possession before the purchase. Accordingly, defendants' motion to dismiss on this ground is denied.[4]

it was "made available" only after the plaintiffs had invested).

**4.** The defendants also advance another argument for dismissal which is similarly without merit. Defendants contend that because plaintiff's argument, i.e., that the prospectuses came too late to undo any prior alleged misrepresentations, is in direct conflict with federal law that permits the prospectus to be delivered concurrently with the confirmation, the doctrine of conflict preemption mandates that federal law be applied and the plaintiff's claims dismissed.

Defendants correctly state that the federal regulatory scheme, in Rule 434, permits the delivery of the final prospectus with the confirmation of the sale of the security. *See* 17 C.F.R. § 230.434(a)(2) (1999). However, even though federal law permits the prospectus to be delivered concurrently with the confirmation of sale, it does not necessarily follow that such a document can be utilized to "cure" prior alleged misrepresentations or omissions. Rather, Rule 434 merely permits distribution participants to satisfy the prospectus delivery requirements through multiple documents that collectively contain all the

## C. Florida Economic Loss Rule

█ The Florida Supreme Court has held that, as a matter of law, a plaintiff may not maintain tort claims to recover economic damages arising out of a contract unless the claims seek redress for physical injury or property damage. *AFM Corp. v. Southern Bell Telephone & Telegraph Co.*, 515 So.2d 180, 181 (Fla.1987) ("parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of the breach of contract"). For many years, courts interpreted the economic loss rule to bar any tort claim not completely separate and independent of a contract. *See Interstate Securities Corp. v. Hayes Corp.*, 920 F.2d 769, 773 (11th Cir.1991) (applying *AFM* to bar breach of fiduciary duty claim in securities context). This very Court held that the economic loss rule precluded common law fraud and breach of fiduciary duty claims concerning the purchase and sale of a security. *McCutcheon v. Kidder, Peabody & Co., Inc.*, 938 F.Supp. 820, 823–25 (S.D.Fla.1996).

Most recently, however, in *Moransais v. Heathman*, 744 So.2d 973 (Fla.1999), the Florida Supreme Court curtailed what it characterized as the "unprincipled extension of the rule." *Moransais v. Heathman*, 744 So.2d 973, 981 (Fla.1999). In *Moransais*, a homeowner brought a professional negligence claim against the engineering firm and the individual engineers who negligently inspected plaintiff's home when they failed to detect and disclose certain defects in the condition of the home inspected. *Id.* at 974–75. The Court held that despite the existence of a contract between the parties, plaintiff's professional claim was not barred by the economic loss rule:

> [T]he mere existence of a contract between the professional services corporation and a consumer does not eliminate the professional obligation of the professional who actually renders the service to the consumer or the common law action that a consumer may have against a professional provider.... We conclude that the principles underlying the economic loss rule are insufficient to preclude an action for professional malpractice under the circumstances presented here.

*Id.* at 983.

Although the holding of *Moransais* was limited explicitly to the claim of professional negligence, state courts have given varied interpretations to the rule since the decision. While some courts have read *Moransais* narrowly,[5] the Third District Court of Appeals has taken another approach. In *First Equity Corp. of Florida, Inc. v. Watkins*, the court extended *Moransais* to further curtail the reach of the economic loss rule to claims for breach of fiduciary duty in the securities context. *First Equity Corp. of Florida, Inc. v. Watkins*, 1999 WL 542639, *1 (Fla. 3d DCA, July 28, 1999). In *First Equity*, the plaintiff sued his security brokers for breach of fiduciary duty. The state intermediate appellate court held:

---

information required by Section 10(a) of the Securities Act. In this case, plaintiff does not allege that the preliminary prospectuses or other offering document failed to state certain information required by Section 10(a), and thus, Rule 434 irrelevant in this case. Accordingly, since plaintiff's claim does not require an interpretation of state law that directly conflicts with federal regulation, defendant's conflict preemption argument inapplicable under these circumstances.

**5.** For example, in *Monroe v. Sarasota County School Board*, 746 So.2d 530, 1999 WL 1127729 (Fla. 2d DCA, Dec.10, 1999), the Second District Court of Appeal declined to extend the *Moransais* reasoning to a negligence claim for failure to place a teacher's name on a list of prospective employees. The court stated:

> We do not believe ... that *Moransais* should be read to allow recovery for purely intangible economic losses through negligence in a wider array of cases that do not present that conflicting issues found in construction law. Rather courts still need to make careful assessments before expanding negligence law to cover purely economic injuries.

*Id.* at *8.

Breach of fiduciary duty is just such a well-established cause of action in tort. Many fiduciaries are appointed pursuant to a written contract, such as a trustee under an express trust, or an escrow agent under a written escrow agreement. It is well understood that the law imposes fiduciary duties in such cases, and that liability can arise when fiduciary duties are breached. We think the *Moransais* opinion makes it quite clear that the economic loss rule has not abolished the cause of action for breach of fiduciary duty, even there is an underlying oral or written contract.

*Id.* at *1. The court also explicitly stated that the Eleventh Circuit's decision in *Interstate Securities Corp. v. Hayes Corp.,* 920 F.2d 769, 773 (11th Cir.1991), could no longer be "regarded as good law on this point," since it was decided at a point when Florida law regarding this issue was "not entirely clear," prior to *Moransais. Id.* at *2 n. 3.

■ In diversity cases arising under Florida law, like this case, a federal court is bound by the law articulated by the Florida Supreme Court. *See Small Business Administration v. Echevarria,* 864 F.Supp. 1254, 1262 (S.D.Fla.1994). If there is no guidance from the highest state court, federal courts are "bound to adhere to the decisions of state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690 (11th Cir.1983); *Liberty Mutual Insurance Co. v. Electronic Systems, Inc.,* 813 F.Supp. 802, 805 (S.D.Fla.1993). Whether or not the federal court agrees with the reasoning of the state court's decision or the outcome which the decision dictates, the federal court is bound by this rule. *Id.* (citing *Delta Air Lines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239,

245 (5th Cir.1974), cert. denied 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975)).

Here, there is no "persuasive indication" that the Florida Supreme Court would disagree with the Third District Court of Appeals. Although the Florida Supreme Court did not overrule its holding in *AFM Corp.,* 515 So.2d 180 (Fla.1987), a closer reading of *Moransais* reveals that the case was cited as an example of a holding which "appeared to expand the application of the rule beyond its principled origins and contributed to applications of the rule by trial and appellate courts to situations well beyond our original intent." *Moransais,* 744 So.2d at 981. The court stated that while it continues to "believe the outcome of [*AFM Corp.*] is sound," it "may have been unnecessarily over-expansive in [its] reliance on the economic loss rule as opposed to fundamental contractual principles." *Id.* Thus, although there is no indication that the Supreme Court would positively affirm the holding in *First Equity,* there is no *persuasive* indication that it would hold otherwise. As such, this Court is bound by the holding in *First Equity.*

■ In the present case, plaintiff brings common law claims for breach of fiduciary duty and fraud against his securities brokers for allegedly misrepresenting material facts regarding the investments. Although a contract may have been involved,[6] under *First Equity,* plaintiff's claims for breach of fiduciary are not automatically barred by the economic loss rule. Although it is unclear whether the remaining common law claims are also exempt from the economic loss rule, in light of *First Equity*'s reasoning, it appears that defendants have not established "beyond doubt" that the plaintiff cannot state a claim. Thus, the Court declines to dismiss these claims at this time. Accordingly, defendants' motion to dismiss Counts I through V is denied.

---

6. The complaint does not allege that a contract existed between Crowell and the defendants, but this Court necessarily assumes that

a contract must have been executed in order for the defendants to sell the Term Trusts' shares to Crowell.

## D. Florida Deceptive and Unfair Trade Act

Plaintiffs allege in Count VI of the complaint that defendants engaged in unfair and deceptive acts in a securities transaction, in violation of the Florida Deceptive and Unfair Trade Practices Act ("DPTA"). Fla.Stat. § 503.201, et seq. (1997). Defendants argue that the DPTA does not apply to the sale of securities, and therefore, the claim should be dismissed.

■ The DPTA, otherwise referred to as the "Little FTC Act," prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." Fla.Stat. § 501.204(1) (1997). While the Legislature directs that the statute be "construed liberally," it also expressly states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act" in construing the terms.[7] Fla.Stat. § 501.204(2) (1997). Although "unfair or deceptive acts or practices" is not specifically defined, in determining whether particular conduct violates the DTPA, a court should consider how the federal statute is applied. *Mack v. Bristol–Myers Squibb Co.*, 673 So.2d 100, 104 (Fla.App.1996). In this case, Crowell's claims arise from securities transactions, i.e. the defendants' allegedly false and misleading representations regarding the nature of the Term Trust Investments. Thus, the issue before the Court is whether "unfair or deceptive acts" relating to securities transactions is encompassed by the DTPA.

■ Whether the DPTA covers the sale of securities is question of first impression in Florida. Since no Florida state court has addressed the issue of DPTA's applicability in the securities fraud context, this Court is left with the difficult task of ascertaining what the Flor-ida Supreme Court would do if confronted with the same question. *See Liberty Mutual*, 813 F.Supp. at 805 (when there is no state authority, the federal court must make an "educated guess" as to how a Florida court would decide). Given the absence of any state court guidance, this Court gives particular "due consideration and great weight" to judicial interpretations of whether Federal Trade Commission Act ("FTC Act") applies to securities transactions.

Several factors favor the conclusion that securities transactions are not within the intended scope of the DPTA. First, the FTC Act has been consistently "interpreted to preclude coverage of securities claims" in the overwhelming majority of state and federal courts addressing this issue. *See Stephenson v. Paine Webber Jackson & Curtis, Inc.*, 839 F.2d 1095, 1101 (5th Cir.1988), cert. denied 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 328 (1988); *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 167 (4th Cir.1985) (noting "the absence of any federal court decision holding that securities transactions are subject to § 5(a)(1) of the FTC Act"). Second, the FTC itself "has never undertaken to adjudicate deceptive conduct in the sale and purchase of securities." *Spinner Corp. v. Princeville Devel. Corp.*, 849 F.2d 388, 392 n. 4 (9th Cir.1988). Despite the apparent breadth of § 5(a)(1) of the FTC Act, plaintiff cites no case in which a federal court or the FTC has applied the FTC Act to a securities transaction.

Third, as the defendants note, numerous other federal courts have declined to apply similar consumer protection statutes of other states to securities fraud claims. *See e.g., Nichols v. Merrill Lynch, Pierce, Fenner & Smith*, 706 F.Supp. 1309, 1337–38 (M.D.Tenn.1989)("almost all state and federal courts construing similar statutes have held that consumer protection laws

---

7. The federal statute states that "[u]nfair methods of competition in affecting commerce, and unfair or deceptive acts or prac-tices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1) (1997).

do not apply to security transactions"); *Mercer v. Jaffe Snider, Raitt & Heuer, P.C.*, 713 F.Supp. 1019, 1030 (W.D.Mich. 1989), *aff'd* 933 F.2d 1008 (6th Cir.1991) (noting that "overwhelming" majority of decisions decline to apply general state consumer protection statute to the securities field). Finally, the fact that the securities field is already heavily regulated by other state and federal laws militates in favor of finding that the DPTA was not intended to apply to securities transactions. *See e.g., Spinner*, 849 F.2d at 392 n. 4 (finding no need for further protection under state consumer law "because such transactions fall under the comprehensive regulatory umbrella of the SEC"); *Caraluzzi v. Prudential Sec., Inc.*, 824 F.Supp. 1206, 1215 n. 9 (N.D.Ill.1993); *Nichols*, 706 F.Supp. at 1337 ("no federal court has applied Section 5(a)(1) of the FTC Act to securities transactions .... because, since its inception, the Securities and Exchange Commission, rather than the FTC, has been responsible for regulating securities transactions").

In light of the foregoing, this Court believes that the Florida Supreme Court, if confronted with the question whether the DPTA applies to claims arising from securities transactions, would hold that it does not. Plaintiff has presented no evidence from the DPTA or state law that suggests Florida would not share this majority view. Thus, defendants' motion to dismiss Count VI is granted.

### III. CONCLUSION

Having considered the motion and the pertinent part of the record and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED

Defendants' motion to dismiss Counts I through V is DENIED. [DE 37]

Defendants motion to dismiss Count VI is GRANTED. [DE 37]