Barbara MOORE, Plaintiff–Appellant,

v.

Dan GLICKMAN, Secretary of Agriculture, Dan Shaw, Thomas Von Garlem, Larry Fleming, Charles Matthews, Pablo R. Reyes, Diane Bowman Friend, Ken White, John Smythe, Floyd Cotton, Ralph Thompson, Freddie Lee, and John Wright Moore, Defendants–Appellees.

No. 95–17435.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1996.

Decided May 7, 1997.

---

Robert V. Krueger, Van Matre & Krueger, Mexico, Missouri, for plaintiff-appellant.

Edward Himmelfarb, United States Department of Justice, Washington, D.C., for defendants-appellees.

Before FLETCHER, WIGGINS, and T.G. NELSON, Circuit Judges.

### OPINION

FLETCHER, Circuit Judge:

Barbara Moore appeals the district court's summary judgment in favor of defendants in her *Bivens* action alleging violations of her federal constitutional rights. We review de novo, *Saul v. United States,* 928 F.2d 829, 832 (9th Cir.1991), and we affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Barbara Moore filed this action against the Secretary of Agriculture, eight officials of the Agricultural Stabilization and Conservation Service ("ASCS"), and four officials of the Agriculture Department's Office of Inspector General ("OIG"), for alleged constitutional violations arising out of the investigation of illegal conduct at the ASCS office where Moore worked, and her removal from her job. Her claims against these federal agents were brought directly under the Constitution. *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Moore was the Chief Program Assistant at the ASCS office in Kern County, California. The ASCS was established pursuant to the Soil Conservation and Domestic Allotment Act, Pub.L. No. 46, 49 Stat. 163 (1935). To-

day, it is part of the Consolidated Farm Service Agency.[1] Under 16 U.S.C. § 590h (1988) (replaced by Pub.L. No. 103–354, § 227(a)(2), 108 Stat. 3178 (1994)), the relevant law as it existed during Moore's tenure and termination, the Secretary of Agriculture was to develop a program of agricultural land stabilization and conservation. The statute directed the Secretary to form local committees to advise the U.S. Department of Agriculture ("USDA") in this task.[2] Community committee members are elected by participating farmers to administer USDA programs such as price supports, agricultural conservation programs, and commodity loan programs.

Moore's claims arise out of an investigation of illegal conduct at the ASCS office by the OIG that began in 1990. Moore alleges that the OIG agents threatened and harassed her, and that the investigation was prompted by allegations of illegal conduct by Pablo Reyes, a member of the California State ASCS Committee, whom Moore had publicly criticized for improper attempts to obtain ASCS benefits. As a result of the investigation's preliminary report, Moore was suspended from her position by the California State ASCS Committee. Moore was not given a copy of this report, although she was given witness statements, canceled checks, and ASCS records supporting the charges made against her.

Moore submitted a written response to the charges and appeared with counsel before the State Committee twice. On March 30, 1992, the final OIG report was issued. Moore did not receive a copy. On May 14, 1992, a supplemental letter of suspension was issued to Moore. Moore appeared again before the State Committee, which upheld three of the four charges against her and determined that she should be removed from her position.

Moore next appealed to Dan Shaw, the Deputy Administrator of the ASCS, who designated Cheryl Zavodny, Deputy Director of the Midwest Area Office of ASCS, as the hearing officer. A two-day hearing took place in which 17 witnesses testified. A 1,166 page transcript was produced. Zavodny issued a decision sustaining two of the charges and finding that the last charge warranted removal. Defendant Von Garlem accepted Zavodny's recommendation, and upheld Moore's removal.

Moore then filed her complaint in federal district court, seeking damages under *Bivens*, reinstatement, and back pay. Defendants filed a motion for summary judgment, asserting that there were "special factors" that precluded the judicial creation of a *Bivens* remedy and that defendants were entitled to either qualified or absolute immunity for their roles in Moore's termination. The district court granted the defendants' motion. It dismissed Moore's constitutional claims with prejudice, but held that Moore had a statutory right to judicial review pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (the "APA"), and granted her leave to file an amended complaint alleging a claim under the APA. The district court issued a partial final judgment under Rule 54(b) of the Federal Rules of Civil Procedure. This appeal followed.

## II. LEGAL FRAMEWORK

Whether a *Bivens* remedy can be implied for ASCS employees of the USDA is a question of first impression in this circuit.

Our analysis of this issue, however, is guided by the Supreme Court's articulation of the factors that courts must consider when determining whether to create a *Bivens* remedy. In *Bivens*, the Supreme Court held that the victim of a Fourth Amendment violation committed by federal offi-

---

1. The Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, Pub.L. No. 103–354, 108 Stat. 3178 (1994), 7 U.S.C. §§ 6901–7014 (West Supp.1997), *inter alia*, reorganized the ASCS into a new agency, the Consolidated Farm Service Agency, which also includes the former Farmer's Home Administration and the Federal Crop Insurance Corporation. 7 U.S.C. § 6932 (West Supp.1997).

2. This committee structure has been retained, but the Secretary now has the discretion to use the committees for carrying out other programs administered by the Secretary. 16 U.S.C. § 590(h) (West Supp.1997).

cers acting under color of their authority could bring an action under federal law for money damages against the officers. The *Bivens* Court observed that "[t]he present case involves no special factors counselling hesitation in the absence of affirmative action by Congress." ·

*Bricker v. Rockwell Int'l Corp.*, 22 F.3d 871, 873 (9th Cir.1993) (citations omitted). More recently, the Court has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker v. Chilicky*, 487 U.S. 412, 421, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988).

■■■■ An express limitation on the creation of a *Bivens* claim can be found when Congress has provided an alternative remedy which it explicitly declares to be a substitute for recovery directly under the Constitution and views as equally effective. *Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980) (citing *Bivens*, 403 U.S. at 397, 91 S.Ct. at 2005; *Davis v. Passman*, 442 U.S. 228, 245–247, 99 S.Ct. 2264, 2276–78, 60 L.Ed.2d 846 (1979)). Implied preclusion of a *Bivens* action can be found when defendants can demonstrate the existence of "special factors counselling hesitation in the absence of affirmative action by Congress." *See Chilicky*, 487 U.S. at 421, 108 S.Ct. at 2467 (citing *Bivens*, 403 U.S. at 396, 91 S.Ct. at 2004–05; *Davis*, 442 U.S. at 245, 99 S.Ct. at 2277). The presence of a deliberately crafted statutory remedial system is one "special factor" that precludes a *Bivens* remedy.

In *Bush v. Lucas*, 462 U.S. 367, 388, 103 S.Ct. 2404, 2416–17, 76 L.Ed.2d 648 (1983), the Court justified its refusal to create a *Bivens* remedy for an employee of the National Aeronautics and Space Administration, who was fired after making critical public remarks about his employer, by explaining that Congress was in a better position to balance the competing policy concerns of "governmental efficiency and the rights of employees." *Id.* at 389, 91 S.Ct. at 2001. There, the existence of a comprehensive statutory remedy, the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified as amended in scattered sections of 5 U.S.C.), which provides extensive review of employment decisions via a Merit Systems Protection Board, was sufficient to foreclose an implied action for money damages.[3] *See* 462 U.S. at 388, 103 S.Ct. at 2416–17.

In *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Court held that even a non-comprehensive statutory remedy precluded a *Bivens* claim. There, Social Security disability recipients sued under *Bivens* for a violation of their due process rights when their benefits were wrongfully terminated. Even though their remedy under the remedial program consisted only of an award of back benefits, the Court held that this was sufficient to preclude a *Bivens* action: "[T]he presence of alleged unconstitutional conduct that is not *separately* remedied under the statutory scheme [does not] imply that the statute has provided 'no remedy' for the constitutional wrong at issue." *Id.* at 427–428, 91 S.Ct. at 2020–21. In *Chilicky* the Court explained that "the concept of 'special factors counselling hesitation in the absence of affirmative action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent." *Chilicky*, 487 U.S. at 423, 108 S.Ct. at 2468.

■■■ Applying *Chilicky*, we have held that where Congress has provided some mechanism for relief that it considers adequate to remedy constitutional violations, *Bivens* claims are precluded. *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 198 (9th Cir.1995) (denying *Bivens* claim to civilian employee of the Navy because Title VII provides the exclusive judicial remedy for claims of discrimina-

---

**3.** Bush was demoted in 1975, before enactment of the CSRA. *See* 462 U.S. at 369–70, 103 S.Ct. at 2406–07. He obtained restoration to his position and backpay by using pre-CSRA civil service remedies. *See id.* at 370–71, 103 S.Ct. at 2407–08. In its review of the remedial system available to civil servants, the Court discussed the "comprehensive nature of the remedies currently available [by then the CSRA system was four years old]," *Id.* at 388, 103 S.Ct. at 2416, which included retroactive seniority, credit for periodic increases and pay raises during the relevant period, and accumulated leave. See *Saul v. United States*, 928 F.2d 829, 833 (9th Cir.1991) for a history of the CSRA.

tion in federal employment); *Bricker v. Rockwell Int'l Corp.*, 22 F.3d 871, 878 (9th Cir.1993) (denying a *Bivens* claim to an employee at the Hanford Nuclear Reservation because administrative procedures included a grievance procedure with arbitration as a final step, and the opportunity to file a formal complaint with the DOE, which it must investigate); *Berry v. Hollander*, 925 F.2d 311, 313 (9th Cir.1991) (denying a *Bivens* claim to a VA physician because he was subject to the regulations of the Department of Medicine and Surgery); *see also Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir.1989) (administrative remedies available under the Civil Service Reform Act to a probationary employee, although discretionary, were adequate to preclude a *Bivens* claim).

## III. DISCUSSION

### A. Congressional Inadvertence

■ ASCS county staff who, like Barbara Moore, are not covered by the CSRA[4] are therefore not eligible for the elaborate system of review of employment decisions by the Merit Systems Protection Board that *Bush v. Lucas* held foreclosed a *Bivens* claim. *Bush v. Lucas*, 462 U.S. 367, 390, 103 S.Ct. 2404, 2417–18, 76 L.Ed.2d 648 (1983). Moore argues that the failure to provide ASCS employees with the comprehensive remedies of the CSRA was inadvertent and that therefore a remedy for money damages should be judicially created. We disagree.

Moore relies upon *Krueger v. Lyng*, 927 F.2d 1050 (8th Cir.1991). There the court found that an employee of the ASCS did have a *Bivens* claim. It was dispositive to the court that

it simply is not true that Congress has authorized a comprehensive scheme governing claims arising out of ASCS county office employment. Rather, it seems plain to us that such employees were eliminated from civil service coverage, and relegated

to a much less desirable scheme fashioned by the Secretary, by administrative decisions neither the fact of which nor the consequences of which did Congress foresee.

*Id.* at 1057.

Moore's employment status, however, is not solely the result of the Secretary's decision that ASCS county employees are to be appointed by a non "employee" as defined by the CSRA. Congress has explicitly recognized ASCS employees' unique status, and chosen to grant them only selective employment rights. It has not granted them coverage under the CSRA, but it has granted them: entitlement to severance pay, 5 U.S.C. § 5595(a)(2)(B); participation in the Civil Service Retirement System, 5 U.S.C. § 8331(1)(F); eligibility for group life insurance, 5 U.S.C. § 8701(a)(8); and eligibility for health insurance benefits, 5 U.S.C. § 8901(1)(G). Former ASCS county employees who have later taken civil service positions governed by the CSRA receive credit for their ASCS service, 5 U.S.C. § 3502(a)(4)(C)(i), and for their rights to annual leave and transfer, 5 U.S.C. § 6312(a)(1).

When Congress has chosen to confer employee status on ASCS county staff, it has done so in express terms. The ASCS employees are included in the Civil Service Retirement System, for example, by inclusion of "an individual employed by a county committee established under section 590h(b) of title 16." 5 U.S.C. § 8331(1)(F). When the USDA was restructured in 1994, Congress specifically stated:

In the implementation of programs and activities assigned to the Consolidated Farm Service Agency, the Secretary may use interchangeably in local offices of the Agency both Federal employees of the Department and non-Federal employees of county and area committees established

---

**4.** The CSRA defines "employee" as one who is appointed by certain high-level federal officials or by someone "who is an employee under this section." 5 U.S.C. § 2105(a)(1)(D). ASCS county employees are appointed by the county executive director, 7 C.F.R. § 7.25(b)(1), who is not an "employee" because he is appointed by the coun-

ty committee. 7 C.F.R. § 7.21(b)(2). The members of the county committees are farmers who are elected, not appointed, to their positions, and so are not themselves "employees" under the CSRA. *Hedman v. Dep't of Agriculture*, 915 F.2d 1552, 1555 (Fed.Cir.1990); *Hamlet v. United States*, 873 F.2d 1414, 1415 (Fed.Cir.1989).

under section 8(b)(5) of the Soil Conservation and Domestic Allotment Act.

7 U.S.C. § 6932(e)(1).

We cannot create a *Bivens* remedy if there are "indications that congressional action has not been inadvertent." *Chilicky,* 487 U.S. at 423, 108 S.Ct. at 2468. Because Congress has explicitly extended some employment rights to ASCS county employees while withholding others, the exclusion of ASCS employees from the CSRA's administrative procedure for the resolution of retaliation claims cannot be characterized as inadvertent. We are therefore precluded from implying a *Bivens* remedy for Moore's claims. *See Chilicky,* 487 U.S. at 423, 108 S.Ct. at 2468 ("[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies."); *Kotarski,* 866 F.2d at 312 ("[s]o long as Congress' failure to provide money damages, or other significant relief, has not been inadvertent, courts should defer to its judgment."); *cf. Bricker,* 22 F.3d at 875 (failed bills "may suggest that Congress's inaction, whatever its reasons, was not wholly inadvertent.").

**B. Alternative Remedies Available to Moore**

■ Moore argues that in line with the 8th Circuit's approach,[5] a *Bivens* remedy should be judicially created because she has no other right to judicial review of the ASCS's administrative decision to terminate her. We disagree.

The district court correctly held that the APA provides Moore with judicial review of her termination. Final agency actions, like this one, are subject to judicial review: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

Section 701(a)(2) of the APA does not, as Moore contends, exempt the ASCS from judicial review because its agency action is committed to agency discretion by law. Congress has granted the Secretary the authority to promulgate regulations "relating to the selection and exercise of the functions of the respective committees." 16 U.S.C. § 590(h). The regulations at issue here, governing the procedures for suspending and removing ASCS county employees, are within this general statutory authority. 7 C.F.R. §§ 7.1–7.38 (1996).[6] Moore's rights and responsibilities were also delineated in the ASCS Handbook for County Office Personnel Management.

The regulations provide that a county employee like Moore may be suspended and removed for cause by the county executive director or the county committee. 7 C.F.R. § 7.28(a) & (b). A suspended person must be given a written statement of the reasons for the suspension and may challenge the suspension in writing, in person, or both. 7 C.F.R. § 7.28(a).

There are three levels of administrative appeal rights, and Moore took advantage of all three. An ASCS employee dissatisfied with a decision of the county executive director or county committee may appeal in writing, in person, or both to the state committee. 7 C.F.R. § 7.30. They may then appeal to the ASCS Deputy Administrator, State and County Operations. *Id.* The employee is entitled to a hearing conducted by the Deputy Administrator or his designee, at which the employee may appear personally or through a representative. 7 C.F.R. § 7.31. At this hearing, both the employee and the agency representatives are entitled to produce and cross-examine witnesses, and the testimony is transcribed and made available to the employee at cost. *Id.* Witnesses are informed that the criminal false-statement provisions of 18 U.S.C. § 1001 apply to their testimony. *Id.* Within 60 days of receipt of the transcript, the hearing officer must transmit to the Deputy Administrator

---

**5.** The 8th Circuit implied a *Bivens* remedy on similar facts because there was "no provision for any sort of judicial review." *Lyng,* 927 F.2d at 1050.

**6.** We cite to the regulations in force when Moore was terminated.

the record of the hearing, his findings and analysis, and a recommended determination. 7 C.F.R. § 7.32. When the Deputy Administrator makes his final decision, he must set forth the basis for this determination. 7 C.F.R. § 7.33. These decisions constitute final agency action and are subject only to judicial review. 7 C.F.R. § 7.33.

The APA requires that a reviewing court set aside any agency action found to be arbitrary, capricious, an abuse of discretion, short of statutory right or contrary to constitutional right, power, privilege, or immunity. 5 U.S.C. § 706. We find that a reviewing court will have sufficient law to apply to determine whether or not Moore's rights were violated. This is not one of those "rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1981).

■ It is well established that APA review is available to other federal employees who are not governed by the CSRA.[7] *See Guerrero v. Stone,* 970 F.2d 626, 628 (9th Cir.1992) (APA review of decisions boards of correction of military records); *Berry v. Hollander,* 925 F.2d 311, 315 (9th Cir.1991) (APA review available to discharged VA physician); *Garrett v. Lehman,* 751 F.2d 997, 999 n. 1 (9th Cir.1985) (APA review of discharge of marine corporal).

■ Moore argues that this administrative remedy cannot bar her *Bivens* action because Congress has not declared that such a remedy is a substitute for recovery under the Constitution or that it views it as equally effective. *Carlson,* 446 U.S. at 19, 100 S.Ct. at 1471–72. Moore is correct that judicial review of her claim under the APA does not automatically preclude her *Bivens* claim. But she is wrong in asserting that the adequacy of the remedy determines when an administrative remedy precludes a *Bivens* claim. A finding of preclusion is premised only on an alternative scheme and some indi-

cation that Congress deliberately elected not to include complete relief. *Chilicky,* 487 U.S. at 423, 108 S.Ct. at 2467–68; *Saul v. United States,* 928 F.2d 829, 837 (9th Cir.1991)(holding that the CSRA precludes even those *Bivens* claims for which the act prescribes no alternative remedy because it found no inadvertence by Congress in omitting the remedy).

We have held that administrative remedies preclude a *Bivens* action even when that relief is incomplete. *See Jones Intercable of San Diego v. Chula Vista,* 80 F.3d 320, 326 (9th Cir.1996) (*Bivens* claim denied to cable operator who was limited to permanent injunctive relief but could not recover damages from city for past violation of his constitutional rights); *Bricker,* 22 F.3d at 873 (*Bivens* claim denied to employee at government-owned, contractor-operated nuclear facility because congressional failure to provide a damage remedy for such employees was not inadvertent and other administrative remedies were available); *Berry v. Hollander,* 925 F.2d 311, 315–16 (9th Cir. 1991) ("Although these remedies [a system of appeals for those in the Department of Medicine and Surgery, reviewable under the APA, as well as a remedy under the Federal Employees Compensation Act, 5 U.S.C. § 8101] do not guarantee full and independent compensation for constitutional violations suffered[,] ... [w]hen Congress has created a statutory remedy for potential harms, the courts must refrain from implying non-statutory causes of actions such as *Bivens.*"); *cf. Chilicky,* 487 U.S. at 427–28, 108 S.Ct. at 2469–70 (where parties are restored to statutory entitlements that were unconstitutionally interrupted, the Constitution does not require additional damages remedy for the constitutional violation itself). Accordingly, we hold that Moore's statutory right to APA review of her termination by the ASCS, limited though it may be, precludes her *Bivens* action.

7. Employees who are covered by the CSRA do not enjoy APA review of the Merit Systems Protection Board adjudication of personnel disputes. *Veit v. Heckler,* 746 F.2d 508, 511 (9th Cir. 1984)("the comprehensive nature of the proce-

dures and remedies provided by the CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA or not at all.").

## IV. Conclusion

We AFFIRM the district court's judgment that Moore's *Bivens* action is precluded by her statutory right to judicial review under the APA.[8]

AFFIRMED.

---

8. We do not address the district court's alternative basis for dismissal, a finding that the federal officers sued were entitled to immunity.