# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-2153

———————

Eileen Buchholz,               \*
                                        \*

       Plaintiff - Appellee,       \*

                                          \*

       v.                                  \*

                                        \*    Appeal from the United States

George Aldaya; Michael W. O'Connor;   \*    District Court for the
and Mariellen Ross, individually and in   \*    District of South Dakota.
their official capacities with the Farm      \*
Service Agency of the United States        \*
Department of Agriculture,               \*

                                        \*

       Defendants - Appellants,    \*

———————

Submitted:  October 21, 1999

Filed:  April 7, 2000

———————

Before WOLLMAN, Chief Judge, ROSS and LOKEN, Circuit Judges.

———————

LOKEN, Circuit Judge.

In 1979, Eileen Buchholz began work as a county-office employee with the Agricultural Stabilization and Conservation Service (ASCS)[1] in South Dakota. In

———————

[1]When the U. S. Department of Agriculture was reorganized in 1994, the ASCS became part of the Department's Consolidated Farm Service Agency. See 7 U.S.C. § 6932. In this opinion, we will use the traditional acronym, ASCS.

March 1995, Buchholz was given written notice that she must improve her work performance in sixty days or be terminated. On July 19, she received a Notice of Separation, effective August 2, citing her failure to improve. After unsuccessful administrative appeals, Buchholz commenced this action against the Secretary of Agriculture and numerous ASCS officials, asserting she is entitled to injunctive relief and damages under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), because defendants denied her procedural due process when they terminated her employment without a full evidentiary hearing at which she could call and cross-examine witnesses. Defendants George Aldaya, Michael O'Connor, and Mariellen Ross appeal a district court order denying them qualified immunity on the grounds that Buchholz possessed a constitutionally protected interest in her employment and the procedures by which she was terminated did not comport with clearly established due process law. We have jurisdiction over interlocutory appeals from the denial of qualified immunity. See Johnson v. Jones, 515 U.S. 304, 310-11 (1995); Mitchell v. Forsyth, 472 U.S. 511 (1985). We reverse.

**I. The Nature of ASCS County-Office Employment.** Since 1935, many ASCS operations have been staffed by State, county, and area committees. Under the present statute, the Secretary of Agriculture appoints the members of the State committees. Local agricultural producers elect the members of the county and area committees. The county and area committees appoint county executive directors, who in turn hire the other county employees under "such regulations as the Secretary considers necessary." 16 U.S.C. §§ 590h(b)(5)(A), (B), and (E). Both county employees such as Buchholz and county executive directors are federal employees, but they fall outside the federal civil service because of the way they are hired and appointed. See 5 U.S.C. § 2105(a)(1)(D); 7 C.F.R. §§ 7.21(b)(2), 7.25(b)(1); Krueger v. Lyng, 927 F.2d 1050, 1054 & n.4 (8th Cir. 1991).

Part 7 of the Secretary's regulations, 7 C.F.R. §§ 7.1-7.38, governs the "Selection and Functions" of ASCS committees. The regulations flatly declare that

county employees serve "at the pleasure of" the county executive director. 7 C.F.R. § 7.25(b)(1). However, the Secretary has also issued a personnel policy manual to State, county, and area committees, called the 22-PM Handbook, which sets forth procedures for hiring, disciplining, suspending, and terminating county-office employees such as Buchholz.

The regulations deal with the suspension and termination of county-office employees in a limited fashion. They provide that any committee member or employee who commits an enumerated offense "shall be" suspended and then terminated. See 7 C.F.R. § 7.28(a). ASCS refers to these as "misconduct" offenses. They are serious types of malfeasance, such as "incompetence," fraud, and civil rights violations. The regulations give the Secretary's Deputy Administrator, as well as State and county committees and county executive directors, authority to take such disciplinary action. See 7 C.F.R. § 7.29. Employees found guilty of such misconduct may appeal, first to the State committee, and then to the Deputy Administrator, who must conduct a formal, trial-type hearing at the employee's request. See 7 C.F.R. §§ 7.30-7.31.

On the other hand, Part 10 of the 22-PM Handbook deals with the issue of employee "Separation and Removals" more broadly. It specifies different procedures for different types of separations, such as "separation for performance," "separation for misconduct," separation of probationary employees, and "RIF separation because of lack of funds or work." 22-PM Handbook ¶ 412B. Part 10, Section 4, deals with separations for misconduct. Consistent with 7 C.F.R. §§ 7.28 and 7.29, these separations are limited to specified grounds, they must be preceded by careful investigation and formal suspension, and they may be initiated by State committees and the Deputy Administrator, as well as by county executive directors. See 22-PM Handbook ¶¶ 444-448. An employee terminated for misconduct may appeal to the State committee, which conducts a non-adversary informal hearing, or to the Deputy Administrator, who must conduct a trial-type formal hearing, as 7 C.F.R. § 7.31 prescribes. See ¶ 451.

Part 10, Section 3, deals with separations for performance. These are termination actions taken by a county executive director "based solely on performance-related problems." The employee must be counseled before a performance separation. See ¶ 432. He or she is entitled to written notice of separation specifying the reasons for the action and any right of review. See ¶ 4.34. An employee who has served at least one year has a right to State committee review of the executive director's adverse decision. The employee "has the opportunity to show cause why he or she should not be separated," but "the formal requirements relating to a review under the removal 'for misconduct' procedure does not apply." ¶ 4.35F.[2] If the State committee upholds a separation decision, the employee may seek review by the ASCS Area Director, but not by the Deputy Administrator. See ¶ 4.35H.

In this case, County Executive Director Ross terminated Buchholz solely for performance-related problems. Her termination was reviewed informally by State Executive Director O'Connor and by Northwest Area Director Allen Durick. But Deputy Administrator Aldaya rejected Buchholz's demand for a formal trial-type hearing on the ground that there is no right to such a hearing for performance separations. It is undisputed that defendants followed the procedures set forth in Part 10, Section 3, of the 22-PM Handbook. Buchholz claims those procedures violate her constitutional right to procedural due process.

**II. The Qualified Immunity Inquiry.** The defendants are government officials. They are entitled to qualified immunity from Buchholz's damage claims unless her termination "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The ultimate qualified immunity question is whether these ASCS defendants violated clearly established constitutional law by limiting Buchholz to the procedures

---

[2]If the termination is based on both performance problems and misconduct, it is governed by the misconduct procedures in Part 10, Section 4. See ¶ 431.

prescribed in the agency's official 22-PM Handbook.  Cf. Hopkins v. Saunders, 93 F.3d 522, 525-26 (8th Cir. 1996).  But we need not reach that question.  When reviewing a claim of qualified immunity, "the first step is to identify the exact contours of the underlying right said to have been violated."  County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998).

A government employee has a right to procedural due process when termination will deprive her of a constitutionally protected liberty or property interest.  See Board of Regents v. Roth, 408 U.S. 564, 569-72 (1972).  If Buchholz had no such interest in continued employment, she had no right to procedural due process during termination.  On the other hand, if Buchholz had a protected interest "governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States," like the federal civil service system, then she has no cause of action under Bivens.  Bush v. Lucas, 462 U.S. 367, 368 (1983); see Schweiker v. Chilicky, 487 U.S. 423 (1988).  The two issues are complex and interrelated.  If defendants prevail on either, "it follows *a fortiori*" they are entitled to qualified immunity.  Drake v. Scott, 812 F.2d 395, 399, aff'd on reh'g, 823 F.2d 239 (8th Cir. 1987).

**III.  May Terminated ASCS County-Office Employees Sue Under Bivens?**
Defendants argue that Buchholz's right to meaningful administrative remedies, and to judicial review of the agency's adverse decision under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, preclude her action for damages under Bivens.  The district court concluded this contention is barred by our decision in Krueger v. Lyng, 927 F.2d 1050 (8th Cir. 1991), where we held that the Secretary's entirely administrative remedial scheme did not reflect a congressional intent to foreclose Bivens actions.  Defendants rely on two subsequent decisions by other circuits that declined to follow Krueger and held that the right of ASCS county-office employees to seek judicial review under the APA forecloses a right of action under Bivens.  See Miller v. USDA

Farm Serv. Agency, 143 F.3d 1413 (11th Cir. 1998); Moore v. Glickman, 113 F.3d 988 (9th Cir. 1997).[3]

Normally, of course, we are obliged to follow a prior panel decision of this court such as Krueger. This is arguably one of those exceptional circumstances where a change in the law renders a prior decision non-binding. Krueger was based upon our conclusion that Congress had not intentionally denied ASCS county office employees both full civil service protection and a constitutional tort remedy. See 927 F.2d at 1056-57. After our decision in Krueger, Congress reorganized the Department of Agriculture. That 1994 legislation specifically stated that the Secretary of Agriculture "may use interchangeably in local offices of the Agency both Federal employees of the Department and non-Federal employees of county and area committees." 7 U.S.C. § 6932(e)(1). The legislative history confirms that Congress intentionally preserved ASCS county employees as a class who can be easily hired, reassigned, or laid off as conditions warrant. See 140 CONG. REC. H9954-58 (daily ed. Sept. 28, 1994). After this legislation, Congress's decision *not* to grant these employees either civil service status or a constitutional tort remedy, but instead to confer the more limited statutory entitlements summarized in Moore, 113 F.3d at 992, can no longer be deemed inadvertent, so Krueger may no longer be controlling. However, we need not decide that question, for there is another threshold issue of law that disposes of Buchholz's due process claim.

**IV.  Does Buchholz Have a Protected Interest in Continued Employment?**
The Due Process Clause protects a government employee's liberty interest.  That

---

[3]Our opinion in Krueger does not discuss the possible significance of APA judicial review.  Neither party briefed that issue in Krueger.  USDA has been inconsistent on this issue, urging courts in the past to deny APA review because ASCS county-office employee terminations are committed to agency discretion, but now arguing there is APA review and it forecloses Bivens damage actions.

interest is implicated when she is terminated amid charges that "seriously damage [her] standing and associations in the community." Roth, 408 U.S. at 573. "The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like." Winegar v. Des Moines Indep. Community Sch. Dist., 20 F.3d 895, 899 (8th Cir.), cert. denied, 513 U.S. 964 (1994). On the other hand, "a plaintiff is not deprived of [her] liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." Ludwig v. Board of Trustees of Ferris State Univ., 123 F.3d 404, 410 (6th Cir. 1997). In McNeill v. Butz, 480 F.3d 314 (4th Cir. 1973), the court held that liberty interests were implicated when ASCS county-office employees were terminated for conduct that amounted to fraud. Consistent with McNeil, the Secretary's regulations recognize the need to protect liberty interests by granting employees accused of misconduct a right to a formal, trial-type hearing on appeal to the Deputy Administrator. See 7 C.F.R. § 7.31. However, Buchholz does not argue that a liberty interest was implicated by her termination, and we see no basis in the record for such a contention.

The Due Process Clause also protects a government employee's property interest in her job. That interest exists only if she has "a legitimate claim of entitlement," not merely a "unilateral expectation" of continued employment. Roth, 408 U.S. at 577. Most federal employees are governed by the Civil Service Reform Act (CSRA), which provides that a Federal agency may remove an employee "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513. Accordingly, federal civil service employees have a legitimate expectancy in continued employment that is a property interest protected by the right to procedural due process. See Arnett v. Kennedy, 416 U.S. 134, 151-52 (1974) (plurality opinion), construed in Bishop v. Wood, 426 U.S. 341, 345 n.8 (1976). See also Gilbert v. Homar, 520 U.S. 924, 929 (1997).

ASCS county employees such as Buchholz do not have the property interest created by the CSRA. The statute under which they are hired, 16 U.S.C. § 590h(b), is an enabling act that confers no statutory property interest, so Buchholz must establish a property interest from the ASCS regulations and policies that defined her terms and conditions of employment. See Winegar, 20 F.3d at 899.

The regulations flatly declare that county employees serve "at the pleasure of" the county executive director. 7 C.F.R. § 7.25(b)(1). That language is inconsistent with the district court's conclusion that Buchholz could only be removed for cause. See Arnett, 416 U.S. at 181-82 (White, J., concurring in part and dissenting in part). Buchholz claims that the termination provisions in 7 C.F.R. §§ 7.28-7.31 limited defendants to terminating her for cause and therefore conferred a property interest. As we have explained, those regulations do not limit the reasons for which an ASCS county-office employee may be fired; they limit an employee's right to *retain* her job by making termination for misconduct mandatory. Because misconduct terminations protect the government's interest in the integrity of its operations, they may be initiated by the Deputy Administrator as well as by the county executive director. Because termination for misconduct may seriously damage the employee's reputation and employment prospects, an employee accused of such misconduct has a right to a trial-type hearing.

On the other hand, performance-related terminations are governed by the 22-PM Handbook. Termination for this reason is initiated by the county executive director. An employee terminated for this reason has a right to an informal hearing on review by the State committee, and further informal review by the Area Director. These minimal procedural requirements are consistent with the declaration in the regulations that county-office employees work "at the pleasure of" the local executive director. These procedures encourage county executive directors to manage wisely, but they confer no property interest for due process purposes. Accord McNeill, 480 F.2d at 320-21.

Accordingly, we hold that at the time she was terminated, Buchholz had no protected interest in her employment as a county-office employee and therefore no constitutional right to the additional administrative procedures she demanded. The district court's Memorandum Opinion and Order dated March 26, 1999, is reversed. The case is remanded with instructions to dismiss Count I and Count II of plaintiff's Second Amended Complaint.[4]

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]Buchholz's Second Amended Complaint also asserted claims under the Rehabilitation Act of 1973, 29 U.S.C.§ 794, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* Those claims are not before us.