Thomas J. BLADE, Plaintiff,

v.

U.S. BANKRUPTCY COURT,
et al., Defendants.

No. C–1–98–699.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 2, 2000.

Donald B. Hordes, Eric S. Clark, Schwartz, Manes & Ruby, Cincinnati, OH, for Plaintiff.

Gerald F. Kaminski, Office of U.S. Attorney, Cincinnati, OH, for Defendant.

## OPINION

BERTELSMAN, District Judge.[1]

This matter is before the court on the Report and Recommendation of United States Magistrate Judge Jack Sherman, Jr., (doc. # 13), plaintiff's objections thereto (doc. # 14), and plaintiff's motion to amend complaint (doc. # 22). The court, having held a hearing on these matters on February 11, 2000, and having given the parties an opportunity to file supplemental briefs to their respective arguments, hereby adopts the Magistrate Judge's Report and Recommendation subject to the following supplementation.

### FACTUAL BACKGROUND

Plaintiff Thomas J. Blade (Blade) was appointed Deputy Clerk/Reproduction Clerk for the United States Bankruptcy Court for the Southern District of Ohio on January 1, 1990. Initially he received very good evaluations, even having received a special service award from the Bankruptcy Clerk on September 17, 1991.

However, in January of 1992, Blade informed his supervisor by telephone that he was experiencing a nervous breakdown due to family problems, job-related stress

---

1. Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

at the intake counter, and anxiety attacks. He requested that he be put in a job situation that did not require public contact. However, the record does not reveal what immediately happened.

Nonetheless, Blade's September 1993 job evaluation acknowledged excellent performance in his job as intake clerk. During this same time, however, a restructuring of the clerk's office was taking place which changed and redefined job functions and requirements. As this reorganization progressed into 1994, the Federal Government began initiating a "downsizing" policy in line with a cost reduction mandate from Washington. This required the operations of the Clerk's office to be performed with less resources and fewer personnel.

During this time, the deputy clerk in charge of the Cincinnati office announced her retirement. In January of 1995, defendant Kenneth Jordan was named to that post. Jordan wanted to tighten up the operations, and one thing he perceived as being a problem was abuse of the leave policies.

From December 1995 until Blade's termination, there were several incidents of his failure to follow proper policies. In a letter dated January 30, 1995, defendant Lynette S. Glover, Assistant Deputy in Charge, recorded an incident of perceived insubordination on Blade's part for his refusal of a work assignment, namely, a direction to relieve and allow another employee to go to lunch.

On February 7, 1996, Blade left a voice message for his supervisor, indicating that he would not be reporting to work and that his leave should be charged to administrative leave although Blade had been previously counseled on the leave policy and directed to submit a request for annual leave. This was also considered as insubordination by Glover, and it was so documented.

Another incident was recorded on March 7, 1996. Blade was suspended for three days for misconduct after an attempt by his supervisor to assign a work detail. He replied to the request to the effect that "he can't [or won't] do everyone's work," although it appears that he ultimately did the task.

Finally, on or about May 1, 1996, Jordan changed the proper procedures for requesting leave. Blade claims that Jordan told the clerks that sick leave would be denied indefinitely and annual leave requests required one-week advance notice.

Blade allegedly became ill on May 3, 1996. He called and left a voice message on his supervisor's phone stating that he would not be coming to work and to place him on eight hours of annual leave, not sick leave. He gave no explanation on this message why he needed to be off. He was also off the following week on a pre-approved vacation.

According to Blade's testimony at the administrative hearing, there was "an informal rule" which allowed voice mail notice of annual leave without prior permission. However, as the administrative judge noted "[i]f this was the prior practice, it represent[ed] the type of abuse of leave that Mr. Jordan has attempted to reform since taking office." (Doc. 34 exh. 1 at p. 9).

Based on this last incident involving Blade's failure to follow proper procedures, upon Blade's return to work on May 13, 1996, Jordan issued a Notice of Proposed Adverse Action [2] recommending termination of Blade for his failure to give proper notice for request of leave. Blade was immediately removed from the clerk's office due to allegations that he was a threat to the office.

Blade, on the other hand, alleges he was terminated for trying to use sick leave to keep a doctor's appointment he had that day. Additionally, in his tendered amend-

---

2. Jordan was following the procedures prescribed by the court's Equal Employment Opportunity Program, which was precisely followed thereafter.

ed complaint, Blade alleges that discrimination based on race and sexual orientation[3] played a part in his termination.

Pursuant to the Judicial Employment Opportunity Program, Blade filed a written response to the Proposed Adverse Action recommending termination. He also requested an administrative hearing pursuant to the court's Program.

On May 29, 1996, Donald E. Calhoun, Jr., a Senior Judge in the Columbus Division of the Bankruptcy Court, was appointed as the Hearing Officer. On June 27, 1996, a hearing was held before Judge Calhoun. Blade was represented by Donald B. Hordes.

The hearing proceeded with testimony taken from several witnesses, including Jordan and Blade. On September 27, 1996, by written opinion, Judge Calhoun upheld the proposed termination. (Doc. # 34 exh. 1). The opinion concluded that the termination was justified because of Blade's willful disregard of leave policies and his poor disciplinary record.

On September 23, 1998, Blade filed a pro se complaint in the United States District Court for the Southern District of Ohio, Western Division. The matter was referred to United States Magistrate Judge Jack Sherman, Jr. The original complaint named only the United States Bankruptcy Court as a defendant.

In Blade's allegations in the complaint, he stated that jurisdiction was based on federal questions regarding whether he was "discriminated against in regard to being discharged for attempting to request leave due to illness and to attend a doctor's appointment and request for administrative review hearings be conducted by a neutral hearing officer." (Comp.¶ 3).

On November 20, 1998, Blade filed an "Amendment to Add Additional Parties as Defendants." This was a one-page document which included the original caption of the case and then listed the following:

1.MICHAEL D. WEBB

CLERK OF COURT

U.S. BANKRUPTCY COURT

SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

120 WEST THIRD STREET

DAYTON, OHIO 45402-1819

2.KENNETH JORDAN

DEPUTY IN CHARGE

U.S. BANKRUPTCY COURT

SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

ATRIUM IISUITE 800

221 EAST FOURTH STREET

CINCINNATI, OHIO 45202-4133

3.LYNETTE GLOVER

ASSISTANT DEPUTY IN CHARGE

U.S. BANKRUPTCY COURT

SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

ATRIUM IISUITE 800

221 EAST FOURTH STREET

CINCINNATI, OHIO 45202-4133

Nothing else at all is included in this document. It is only a caption lacking any body of text. There are no allegations against the individual defendants, and Blade failed to specify whether they were being sued in their individual or official capacities. Additionally, he did not state that he was incorporating his original complaint into this pleading.

On April 26, 1999, Magistrate Judge Sherman issued a Report and Recommendation, recommending defendants' motion to dismiss or motion for summary judgment be granted. Magistrate Judge Sherman concluded that the Bankruptcy Court had sovereign immunity from Blade's claims and that the United States had not

---

3. Apparently Blade believes he was perceived as a homosexual. It is not clear whether or not he is in fact a homosexual. These claims were only peripherally referred to in the administrative proceedings.

waived immunity for liability for defamation.

Additionally, Magistrate Judge Sherman recommended that Blade's intentional infliction of emotional distress claim be dismissed due to his failure to file an administrative tort claim with the Administrative Office of the United States Court as required by the Federal Tort Claims Act, 28 U.S.C. § 2675(a). Furthermore, Magistrate Judge Sherman recommended that Blade's contract claim be dismissed because the court had no jurisdiction over contract claims against the United States in excess of $10,000.

As to any discrimination claims, Magistrate Judge Sherman found that Blade failed to articulate what type of discrimination he complained of and, moreover, as a federal judicial employee, he was excluded from Title VII protection. Magistrate Judge Sherman also recommended dismissing any claims against the individual defendants due to Blade's failure to allege any claims against them.

Blade filed timely objections to the Report and Recommendation. On January 5, 2000, he filed a motion for leave to file an amended complaint. In the tendered amended complaint, Blade alleges that he is a victim of reverse discrimination and discrimination based on his perceived sexual orientation. A Caucasian, Blade alleges that he was working in a predominantly African American environment and that he was perceived as being a homosexual. He maintains that as a result of such he was assigned excessive work, denied a promotion, subjected to racial and sexual orientation epithets, and arbitrary and groundless discipline. Furthermore, he alleges that his termination was the ultimate result of this discrimination. He seeks to assert a *Bivens* action against the individual defendants on these grounds.

On February 11, 2000, this court held oral arguments on Blade's motion to amend and his objections to the Report and Recommendation. Blade was represented by Mr. Hordes. At the conclusion of the hearing, the court ordered both parties to file supplemental memoranda. This matter is now ripe for final disposition.

## ANALYSIS

Blade contends that he, a federal employee alleging discrimination against his employer, should be able to proceed with this case pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens*, the Supreme Court held that victims of a constitutional violation committed by a federal agent may recover damages despite the absence of a statute conferring the right to such. "However, a *Bivens* cause of action will not be implied if the defendant shows ... 'special factors counselling hesitation in the absence of affirmative action by Congress' ...." *Leistiko v. Secretary of the Army*, 922 F.Supp. 66, 73 (N.D.Ohio 1996), *aff'd*, 134 F.3d 817 (1998), (*quoting Bivens*, 403 U.S. at 396, 91 S.Ct. at 2005).

"The Supreme Court has held that it is inappropriate to supplement the regulatory scheme with new judicial remedies when a federal employee asserts a work-related claim that is governed by comprehensive provisions which afford the employee meaningful remedies against the United States." *Id.* (*citing Bush v. Lucas*, 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983)). Thus, " '[w]hen the design of a government program suggests that Congress has provided mechanisms for constitutional violations that may occur in the course of its administration, [it will] not create[ ] additional *Bivens* remedies.' " *Meredith v. United States Dept. of Justice*, 166 F.3d 1214, No. 97–4138, 1998 WL 833690 at *4, (6th Cir. Nov.20, 1998) (*quoting Schweiker v. Chilicky*, 487 U.S. 412, 423, 108 S.Ct. 2460, 2468, 101 L.Ed.2d 370 (1988)). "Courts following th[e] directive [of the Supreme Court in *Bush* ] have consistently *refused to create Bivens remedies*

*in the field of federal employment, even if [the regulatory scheme] has provided no remedy at all." Leistiko,* 922 F.Supp. at 73 *(citing Jones v. Tennessee Valley Authority,* 948 F.2d 258, 264 (6th Cir.1991)) (emphasis added).

The Supreme Court and the Sixth Circuit, along with other circuits, have refused to create *Bivens* actions in a wide variety of cases. *See e.g. F.D.I.C. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) *(Bivens* actions not extended to federal government agencies); *U.S. v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (no *Bivens* remedy available for injuries that arise out of or are in the course of activity incident to military service); *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (refusing to permit federal employee a damages cause of action out of an employment relationship on grounds that civil service damages are available); *Watkins v. Veterans Admin. Medical Center,* 968 F.2d 1217, No. 91–5987, 1992 WL 146636 (6th Cir. June 24, 1992) (federal employee's termination is properly challenged with Merit Systems Protection Board and not properly brought as a *Bivens* action); *Lee v. Hughes,* 145 F.3d 1272 (11th Cir.1998) (federal employee's racial discrimination claim was governed by the Civil Service Reform Act, and employee was precluded from bringing *Bivens* claim).

Blade as a federal employee is covered under the Civil Service Reform Act ("CSRA") of 1978. CSRA was created by Congress as a framework for federal personnel policy. *Collins v. Bender,* 195 F.3d 1076 (9th Cir.1999). CSRA includes a comprehensive scheme for the rights and responsibilities of federal employees of various classes of employment. Thus, " 'the unique relationship between the Federal Government and its civil service employees is a special consideration which counsels hesitation in inferring a *Bivens* remedy in the absence of affirmative congressional action.' " *Braun v. United States,* 707 F.2d 922, 926 (6th Cir.1983)

*(quoting Bush v. Lucas,* 647 F.2d 573, 576 (5th Cir.1981), *aff'd* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)).

Therefore, in light of the special relationship between the federal government and its employees, this court holds that the presence of a deliberately crafted statutory employment system is a "special factor" that precludes a *Bivens* remedy for federal employees. *See Moore v. Glickman,* 113 F.3d 988 (9th Cir.1997). Hence, since Blade is a federal employee subject to the CSRA, he is precluded from bringing a *Bivens* action.

Although Blade makes several alternative arguments why this court should nonetheless allow him to proceed with a *Bivens* action,

> courts must give appropriate deference to indications that congressional inaction has not been inadvertent and should not create *Bivens* remedies when the design of a government program suggests that Congress has provided what it considers to be adequate remedies for constitutional violations. Congress is in the best position to balance governmental efficiency and individual rights.

*Jones v. Tennessee Valley Authority,* 948 F.2d 258, 263–64 (6th Cir.1991).

This court finds the opinion in *Blankenship v. McDonald,* 176 F.3d 1192, 1195 (9th Cir.1999), particularly persuasive on this point. The case involved an action by a federal court reporter against a United States District Judge and the Clerk of the District Court, alleging retaliation for the plaintiff's testimony at an official hearing. The *Blankenship* opinion bears quoting here at length.

> Blankenship, as an appointed judicial employee, is a member of the "excepted service" under the CSRA. [FN4] Blankenship argues that because she has no administrative or judicial remedies under the CSRA as a member of the excepted service, she is entitled to assert a *Bivens* claim.

FN4. "Civil service" consists of all appointive positions, including those in the judicial branch, 5 U.S.C. § 2101; court reporters are appointed under 28 U.S.C. § 753(a); "civil service" includes those in "excepted service" under 5 U.S.C. § 2103, which includes everyone who is not in the two other categories of civil service.

In *Bivens,* the Supreme Court held that a plaintiff could state a claim and recover money damages against federal officials for constitutional violations where there are no "special factors counseling hesitation in the absence of affirmative action by Congress." 403 U.S. at 396–97, 91 S.Ct. 1999, 29 L.Ed.2d 619. "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration," the Supreme Court has not created additional *Bivens* remedies. *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). Accordingly, we have declined to create a *Bivens* remedy if there are "indications that congressional action has not been inadvertent." *Moore v. Glickman,* 113 F.3d 988, 993 (9th Cir.1997) (*quoting Chilicky,* 487 U.S. at 423, 108 S.Ct. 2460, 101 L.Ed.2d 370).

The CSRA contains an "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations ..." *Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). In *Saul v. United States,* 928 F.2d 829, 840 (9th Cir.1991), we stated:

"The CSRA's comprehensive remedial provisions convince us that there was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related action allegedly violate a subordinate's constitutional rights. In the area of federal employment, Congress is bet-

ter equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce."

Because congressional action has not been inadvertent in providing certain remedies and denying others to judicial employees, we hold that the CSRA precludes a *Bivens* remedy in this case. *Accord Lee v. Hughes,* 145 F.3d 1272, 1275 (11th Cir.1998). Congress has given judicial employees certain employment benefits and remedies, such as back pay, severance pay, family and medical leave, and health and retirement benefits. Congress has withheld other benefits and remedies, such as review of adverse personnel decisions. This demonstrates that the lack of more complete remedies was not inadvertent. *See Moore,* 113 F.3d at 992; *Kotarski v. Cooper,* 866 F.2d 311, 312 (9th Cir.1989).

*Blankenship,* 176 F.3d at 1195.

The court notes that the federal judiciary has had an official policy for equal employment opportunity since 1966. Blade made full use of a plan provided by the Bankruptcy Court pursuant to that policy. The existence of such policy was undoubtedly a factor in Congress's deliberately choosing not to bring federal courts under Title VII or similar legislation. Such choice by Congress precludes the existence of a *Bivens* action in this situation.

Furthermore, the Supreme Court has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts. The absence of statutory relief for a constitutional violation... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Schweiker v. Chilicky,* 487 U.S. 412, 421–22, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988).

878

Finally, the court notes this case is very similar to *Kostishak v. Mannes*, 145 F.3d 1325, No. 97–1500, 1998 WL 196607 (4th Cir. April 22, 1998). In *Kostishak*, a former bankruptcy clerk brought suit against bankruptcy judges for alleged age and disability discrimination after his forced resignation. The court held that it would not fashion a *Bivens* remedy where Congress had provided an equally effective statutorily exclusive remedy finding the establishment of such a scheme is a special factor that counsels hesitation. *Id.* at *2.

*Kostishak* involved an "EEO Plan" adopted pursuant to the Congressional Accountability Act of 1995. Judiciary plans pursuant to this Act were generally not adopted until 1997, pursuant to the Judicial Conference's implementation of the Act. At the time of the termination of the instant plaintiff, the defendant Bankruptcy Court had not yet adopted a plan pursuant to this Act. But it had in place a voluntary plan pursuant to the Judicial Conference policy mentioned above, which was adopted in 1966.

In any event, in the Congressional Accountability Act of 1995, Congress expressly decided not to apply Title VII and the other anti-discrimination laws with their appurtenant causes of action to the judiciary. This express decision of Congress is a "special factor" under *Bivens*.

Blade relies on *Duffy v. Wolle*, 123 F.3d 1026 (8th Cir.1997), *cert. denied*, 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998), for his case. In *Duffy*, the court allowed a federal employee to proceed with a *Bivens* action based on the finding that the defendants failed to present any evidence that Congress intended to delegate to the Judicial Conference the authority to preempt a *Bivens* action in favor of administrative remedies.

However, the Eighth Circuit failed to address the impact of the CSRA on plaintiff's claims. This court agrees with the Eleventh Circuit's note in *Lee v. Hughes*, 145 F.3d 1272 n. 4 (11th Cir.1998) stating that:

> [i]t appears that the defendants in *Duffy* never suggested that the CSRA preempted plaintiff's claim, but rather argued only that plaintiff's *Bivens* claim should have been dismissed because the local EEO Plan provided plaintiff with a remedy. Because the Eighth Circuit did not address the CSRA's effect on Duffy's *Bivens* claim, *Duffy* is not instructive here.

Thus, this court finds Blade's reliance on *Duffy* is misplaced.[4] For the reasons stated, Blade is precluded from bringing a *Bivens* action.

Since Blade cannot bring a *Bivens* action as a federal employee, the court lacks jurisdiction over this case. *Collins*, 195 F.3d 1076. Therefore, the parties' remaining arguments regarding the *Bivens* claims, such as whether Blade properly added the individual defendants, and whether his tendered amended complaint relates back to the original complaint are moot, and the court declines to rule on them.

This court, having considered *de novo* the objections filed by Blade, and being duly advised,

**IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation (doc. # 13) of the Honorable Jack Sherman, Jr., United States Magistrate Judge of the Southern District of Ohio, is hereby

4. *Lee* contains an extensive discussion that is most instructive. The same considerations apply to *Guercio v. Brody*, 911 F.2d 1179 (6th Cir.1990). There, the Sixth Circuit reviewed a *Bivens* action against a bankruptcy judge and a district judge. However, no challenge to the propriety of such action was made or considered. Therefore, the court does not consider *Guercio* to have any precedential effect in the instant case. The court believes the Sixth Circuit would follow the vast weight of modern authority as discussed herein. *See* specially *Meredith v. U.S. Dep't of Justice*, 166 F.3d 1214, No. 97–4138, 1998 WL 833690 (6th Cir. Nov.20, 1998) and *Jones v. Tennessee Valley Authority*, 948 F.2d 258 (6th Cir.1991).

**adopted** with the foregoing supplementation.

2. Plaintiff's objections (doc. # 14) to the Report and Recommendation are hereby **overruled.**

3. Plaintiff's motion for a default judgment (doc. # 12) is hereby **denied.**

4. Defendants' motion to dismiss or in the alternative for summary judgment (doc. # 9) is hereby **granted.**

5. Plaintiff's motion to amend his complaint (doc. # 22) is hereby **denied.**

6. Defendants' motion in opposition to plaintiff's motion for leave to file amended complaint or in the alternative motion to dismiss (doc. # 27) is hereby **denied as moot.**

7. That a separate Judgment shall enter concurrently herewith.